GUDENAU & CO., INC., Appellant,

v.

SWEENEY INSURANCE, INC., Appellee.

No. S-1347.

Supreme Court of Alaska.

May 8, 1987.

---

Peter W. Giannini, Law Offices of Giannini & Associates, Anchorage, for appellant.

Gary A. Zipkin and Debra J. Brandwein, Guess & Rudd, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

On a motion for summary judgment the superior court dismissed appellant Gudenau & Company's (Gudenau) counterclaim, ruling that it was barred by the statute of limitations. Because Gudenau raised significant questions of fact concerning appellee's ability to invoke the statute of limitations defense, we reverse the dismissal of Gudenau's counterclaim and remand the case for trial.

### I.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Alaska R.Civ.P. 56(c). The court does not attempt to weigh the evidence nor evaluate the credibility of witnesses on a motion for summary judgment. Instead, the evidence and all reasonable inferences that may be drawn from it will be viewed in the light most favorable to the party opposing the motion for summary judgment. *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985). We therefore assume that the facts set forth in Gudenau's affidavit are true and capable of proof. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727, at 125–28 (1983).

Appellant Gudenau purchased an "all risk" insurance policy for a crane through appellee Sweeney Insurance (Sweeney), an insurance broker. Sweeney allegedly assured Gudenau that the policy would cover any type of damage except that incurred while operating the crane on ice or muskeg. In fact, Sweeney procured the standard all-risk policy which contains a number of exclusions, including loss caused by "latent defect" and "structural, mechanical, or electrical breakdown."[1]

The crane collapsed during use on September 15, 1982, due to a structural defect in the crane's mounting. Gudenau reported the loss to Sweeney and Sweeney notified the insurance carrier, Marine Corporation of America, of Gudenau's loss. Following an investigation of the accident, Marine denied the claim under the policy's structural defect exclusion clause. Gude-

---

1. The relevant exclusions provide that:
   *THIS POLICY DOES NOT INSURE AGAINST*
   a. Wear, tear, gradual deterioration, inherent vice, latent defect, rust, corrosion, freezing or overheating.
   b. Loss or damage to the insured property occasioned by or actually resulting from any work being done thereon, or any structural, mechanical or electrical breakdown, unless fire or explosion ensue and then only by the loss or damage by such ensuing fire or explosion.

nau received a copy of the denial on November 15, 1982.

Gerald Gudenau promptly confronted Sweeney. He allegedly received assurance that the loss was covered by the policy. Sweeney indicated the insurance carrier had mistakenly denied the claim and promised to ask Marine to reconsider its denial.[2]

Sweeney, however, took no action on Gudenau's claim. Sixteen months passed before Gudenau sought reconsideration through the assistance of another insurance broker. On June 8, 1984, Gudenau received notice that its claim had been reconsidered by Marine and denied.

By July of 1984 Gudenau believed that it had a viable cause of action against Sweeney for insurance broker malpractice. Gudenau offered to refrain from bringing a malpractice suit if Sweeney would agree to drop an unrelated claim of approximately equal value that it held against Gudenau. Gudenau claims that Sweeney agreed to the proposed set-off.[3]

Sweeney breached the alleged accord and satisfaction by bringing suit against Gudenau on the unrelated claim in January of 1985. On March 4, 1985, Gudenau counterclaimed for breach of warranty, based on Sweeney's failure to procure the type of insurance coverage which Gudenau had requested. Sweeney moved to dismiss the counterclaim, pleading that the statute of limitations had expired in September of 1984, two years from the date of the crane accident. Gudenau agreed that Alaska's

two-year statute of limitations governed this action,[4] but argued that the limitations period had been tolled or that Sweeney was estopped from relying upon it. The superior court granted Sweeney's motion for summary judgment and dismissed the counterclaim.

## II.

The statute of limitations ordinarily begins to run on the date on which the plaintiff incurs injury. W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on The Law of Torts* § 30, at 165 (5th ed. 1984). Older cases applied this rule literally to bar any action initiated more than two years after the plaintiff or his insured property was tortiously damaged. For example, in *Austin v. Fulton Ins. Co.*, 444 P.2d 536, 539 (Alaska 1968), we held that the plaintiff's claim for negligent failure to procure complete insurance coverage arose, and the limitation period began, on the date when an earthquake destroyed the insured property.

■ Our former practice has been modified by the adoption of the "discovery rule" method for tolling the operation of the statute of limitations. *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829–30 (Alaska 1982). Today the statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. *Hanebuth*

---

**2.** Sweeney denies that any such meeting took place.

**3.** Sweeney claims that it unequivocally rejected Gudenau's offer.

**4.** AS 09.10.070 provides that:

No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise ... unless commenced within two years.

Part of Gudenau's claim might be better governed by Alaska's six-year statute of limitations for contract actions. AS 09.10.050 provides that:

No person may bring an action (1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040 or 09.10.055; (2) for waste or trespass upon real

property; or (3) for taking, detaining, or injuring personal property, including an action for its specific recovery, except those mentioned in AS 09.10.055; unless commenced within six years.

In *Van Horn Lodge, Inc. v. White*, 627 P.2d 641, 643 (Alaska 1981), we distinguished between contract actions, which involve the breach of "an agreement to obtain a particular result or to do a particular thing," and tort actions, which merely involve a breach of the common law duty of care. Sweeney's promise to obtain a particular type of insurance coverage for Gudenau sounds in contract rather than tort. Although we do not determine issues which the parties fail to raise below or on appeal, we note that Gudenau's 1982 claim would be timely filed under a contract theory of recovery.

*v. Bell Helicopter, Int'l,* 694 P.2d 143, 144 (Alaska 1984).

▮▮▮ Gudenau contends that the superior court applied the improper standard of computation—that is, the date of injury or damage instead of the date of discovery. Whether the court applied the correct legal standard is a question of law which we review *de novo. Jackson v. White,* 556 P.2d 530, 533 n. 8 (Alaska 1976). The superior court found that the statute of limitations began to run on September 15, 1982, the date on which Gudenau's crane was damaged. Although the court did not explain the basis of its finding, it appears that the court incorrectly measured the limitations period by the date of damage rather than the date of discovery. The court should have looked to the date on which Gudenau discovered, or reasonably should have discovered, Sweeney's failure to procure the all-inclusive insurance coverage which it promised to provide.

▮▮ In the alternative, the superior court may have believed that September 15, 1982, was the latest reasonable date of discovery. Such a finding would be erroneous. The date of discovery is a question of fact which cannot ordinarily be determined by the superior court on a motion for summary judgment. *Bookman,* 657 P.2d at 830–31. Where reasonable minds could draw different conclusions as to the date of discovery, a genuine issue of material fact exists and summary judgment must be denied. In this case reasonable minds may disagree as to whether September 15, 1982, was the latest reasonable date of discovery.

▮▮▮ Sweeney argues that Gudenau should have read its policy and discovered the structural defect exclusion clause before the accident occurred on September 15, 1982. Gudenau claims to have been unaware of the exclusion on or before the date of the accident. For the limited purposes of summary judgment, we accept Gudenau's allegations as true. Insurance policy exclusions do not necessarily have independent meaning for a layperson. The insured is entitled to rely on his broker's professional skill and representations when interpreting the scope of his insurance coverage.[5] Viewing the evidence in a light most favorable to Gudenau, we think that it would be reasonable for Gudenau to believe that the coverage in its insurance policy conformed to the all-inclusive coverage that Sweeney promised to obtain. Whether Gudenau actually believed this is a question to be resolved by the trier of fact.

▮▮ In the alternative, Sweeney insists that a diligent party would discover the limited nature of its insurance coverage when its claim was rejected by its insurer. On November 15, 1982, Gudenau received a letter from Marine which drew the reader's attention to the policy's structural defect exclusion clause, and which denied Gudenau's claim on that basis. We believe that this information would be sufficient to alert a reasonably diligent plaintiff to the existence and scope of the structural defect exclusion. On this point reasonable minds could not differ. Gudenau professes a need for a second examination and denial of its claim, but we do not see how a second, third, or fourth denial would significantly add to a prospective plaintiff's understanding of its insurance policy. The first denial of Gudenau's claim was sufficient to reveal Sweeney's potential breach of warranty. *See Sharrow v. Archer,* 658 P.2d 1331, 1335 (Alaska 1983).[6]

---

5. *Cf. INA Life Ins. Co. v. Brundin,* 533 P.2d 236, 242 (Alaska 1975), holding that an insurer is bound by its representations as to the extent of insurance coverage purchased. An insurance broker is similarly bound.

6. In *Sharrow* we tolled the limitation period until plaintiff obtained a professional opinion which conflicted with the opinion of the defendant doctor. This conflict was sufficient to alert plaintiff to the need to protect her rights, and was therefore sufficient to start the beginning of the limitations period.

Gudenau was presented with a similar conflict of opinion in November of 1982, when its claim was denied under the structural defects exclusion clause. To the extent that the insurance carrier and broker offered different interpretations of the policy language, Gudenau's cause of action was not obscured, but rather two potential causes of action were revealed: one against the carrier, another against the bro-

Thus, we find that the statute of limitations began to run no later than November 15, 1982, when Gudenau should have discovered the exclusion clause and Sweeney's breach of warranty. Gudenau's suit was filed on March 4, 1985, more than two years after the limitations period began. Gudenau's suit is therefore barred by the two-year statute of limitations, unless there is another legally sufficient reason to toll the statute or to estop Sweeney from relying upon the statute.

### III.

Gudenau offers an alternative reason for extending the tolling period to June 1984, to cover the 19 months during which it sought reconsideration of its claim. Gudenau argues that its efforts to obtain reconsideration of the claim constituted the pursuit of an alternative legal remedy sufficient to toll the statute of limitations.

■ The need for equitable tolling arises when a plaintiff has multiple legal remedies available to him. Courts will not force a plaintiff to simultaneously pursue two separate and duplicative remedies. Where the plaintiff adopts a single course of action which is dismissed or otherwise fails, courts generally allow the plaintiff to pursue a second remedy based on the same right or claim, tolling the limitations period during the pendency of the initial defective action. *E.g., Nelson v. Int'l Paint Co.,* 716 F.2d 640, 645 (9th Cir.1983); *Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327, 1332–33 (1985).

■ A plaintiff must satisfy three requirements in order to establish his right to pursue an otherwise untimely remedy. His pursuit of the initial remedy must give the defendant notice of the existence of a legal claim against it; the defendant must not be prejudiced in its ability to gather evidence by the bringing of the second claim; and the plaintiff must have acted in good faith. *Jackson v. Hayakawa,* 605 F.2d 1121, 1127 (9th Cir.1979), *cert. denied,* 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980); *Ho-*

*sogai,* 700 P.2d at 1333; *Addison v. State,* 21 Cal.3d 313, 146 Cal.Rptr. 224, 226–27, 578 P.2d 941, 943–44 (1978).

■ Gudenau fails to satisfy the first element of the test. Invariably, the statute of limitations is tolled only for those who initially pursue their rights in a judicial or quasi-judicial governmental forum. The pursuit of non-judicial remedies rarely gives the defendant adequate notice of the existence of a legal claim against it. For example, in *Brown v. Wood,* 575 P.2d 760 (Alaska 1978), the plaintiff attempted to toll the statute on an employment discrimination action by complaining to the defendant University of Alaska, seeking relief through the school's administrative channels. Assuming without deciding that private action might toll the statute, we held that three private complaints, spread over the course of five years, were too sporadic to give defendant notice of a legal claim. *Id.* at 771.

Gudenau communicated a single private complaint concerning the policy to Sweeney in November of 1982. Gudenau did not take further action on its policy until sixteen months had elapsed and at that time Gudenau addressed its complaints to another broker so that Sweeney had no notice of them. Such actions as these do not give Sweeney timely notice of the existence of a legal claim against it. It would be inequitable to toll the statute of limitations without such notice.

### IV.

■ Our inquiry does not end with our holding that the limitations period was not equitably tolled. A plaintiff who is aware of the elements of his cause of action but fails to file suit within the limitations period may still be protected if he has been induced, by defendant's words or conduct, to postpone filing suit until the limitations period has run. *E.g., Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1070–71 (7th Cir.1978). One who induces delay will be

---

ker. The two conflicting interpretations were sufficient to alert Gudenau to the need to take

action to protect its rights.

equitably estopped from asserting the delay as a bar to plaintiff's action, upon the equitable principle that no party will be permitted to profit from his or her own wrongdoing. *Id.*, citing *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232–34, 79 S.Ct. 760, 761–63, 3 L.Ed.2d 770, 772 (1959).

▮ Alaska has applied the principle of equitable estoppel to the statute of limitations in *Groseth v. Ness*, 421 P.2d 624, 630 (Alaska 1966), and in subsequent cases. In order to establish a right to equitable estoppel under Alaska law, a plaintiff must produce evidence of fraudulent conduct upon which it reasonably relied when forbearing from suit.[7] Plaintiff must also show that it resorted to legal action within a reasonable period after the circumstances ceased to justify delay.[8] *See* Annotation, *Plaintiff's Diligence as Affecting His Right to Have Defendant Estopped from Pleading the Statute of Limitations*, 44 A.L.R.3d 760, 774 (1972); 51 Am.Jur.2d *Limitation of Actions* § 437 (1970). The length of time, if any, during which a plaintiff can reasonably claim to be lulled into inaction is generally a question of fact.

▮ Gudenau has alleged facts sufficient to establish the basic elements of equitable estoppel. On November 15, 1982, Gudenau had reason to sue Sweeney for failing to procure the type of insurance coverage which it had promised. However, Sweeney allegedly dissuaded Gudenau from filing suit by assuring Gudenau that the loss of the crane was in fact covered under the policy. Sweeney claimed that the carrier had misinterpreted the policy and that Sweeney would try to correct the mistake on Gudenau's behalf. The reasonableness of Gudenau's alleged reliance on these promises, and the date when Sweeney's conduct ceased to justify further delay in bringing suit, are questions of fact which the parties dispute. It is necessary to resolve these questions in order to determine whether equitable estoppel should be applied. We therefore remand this issue to the superior court, so that each party may have an opportunity to prove its case at trial.

## V.

▮ Gudenau also claims that the parties reached an accord and satisfaction

---

**7.** We refused to find an equitable estoppel in *Groseth* where "the record [was] devoid of any evidence that appellant relied upon any false or fraudulent representation or conduct on [defendant's] part, and by virtue of such reliance refrained from obtaining the services of an attorney and from instituting timely suit." 421 P.2d at 631.

Likewise, in *Chiei v. Stern*, 561 P.2d 1216 (Alaska 1977), there was no evidence that plaintiff's failure to timely file suit was caused by defendant's promise to retract an allegedly libelous statement. Rather plaintiff's erroneous assumption of law prevented him from filing shortly after he learned that defendant would not retract his statement. *Id.* at 1217–18.

In *Garfield v. Clark*, 567 P.2d 777, 781 (Alaska 1977), we held that a statement that any judgment would have to be collected from insurance proceeds, or defendant would file for bankruptcy, did not lull plaintiffs into a false sense of security that justified a delay in filing suit.

Finally, in *Sharrow v. Archer*, 658 P.2d 1331 (Alaska 1983), we found that the plaintiff's delay in filing suit was unreasonable.

One federal district court has applied Alaska law to estop a defendant from asserting the statute of limitations as a defense. In *Asher v. Reliance Ins. Co.*, 308 F.Supp. 847 (N.D.Cal. 1970) a fire broke out on plaintiff's Juneau

property. Defendant insurance company repeatedly promised to reimburse plaintiff for the loss but took no action on plaintiff's claim until the policy limitation period had run. The company then refused to honor plaintiff's claim. The court estopped defendant from raising the policy limitation as a defense to plaintiff's ensuing lawsuit, holding that plaintiff's delay in filing was induced by defendant's promise to cover the claim. *Id.* at 853.

**8.** At least one jurisdiction applies the doctrine of equitable tolling to instances of fraudulent inducement to delay suit. *Hosogai v. Kadota*, 700 P.2d at 1331. Most jurisdictions distinguish this situation from the tolling doctrine and treat the question as one of estoppel. *E.g.*, *Bomba v. Belvidere, Inc.*, 579 F.2d at 1070.

The difference is significant. When the statutory period is tolled, plaintiff has the full statutory limitations period in which to file once the tolling ceases. When estoppel is applied, the plaintiff is required to file suit within a reasonable period after defendant's conduct has ceased to justify delay. The filing period under the estoppel doctrine is more subjective, indefinite, and generally shorter than under the tolling doctrine. Numerous examples of this distinction are listed in Annot., 44 A.L.R.3d 760, 774 *infra*.

within the limitations period, and that Sweeney subsequently breached the agreement shortly after the limitations period had run. We believe that Gudenau's allegations are sufficient to raise a genuine question of fact as to the existence of an accord and satisfaction, which cannot be resolved without further proceedings in the trial court.

An accord and satisfaction is an agreement between a debtor and a creditor to settle a debt by some performance other than that which is due. *Stephenson v. Ketchikan Spruce Mills*, 412 P.2d 496, 498 (Alaska 1966). Like any contract, it requires an offer, acceptance, and consideration. *Air Van Lines v. Buster*, 673 P.2d 774, 777 (Alaska 1983). The statute of limitations for claims arising out of the breach of an accord and satisfaction does not begin to run until the date that the accord is breached. *See Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 490–91 (Alaska 1975).

In this case the question is whether Gudenau has alleged facts which show that Sweeney accepted Gudenau's offer of an accord that would offset the parties' unrelated claims. Gudenau never said that Sweeney "accepted" or "agreed" or even shook hands on the matter. In fact, Gudenau does not remember what Sweeney said. Gudenau's affidavit states:

> While I don't remember his exact words, Tom [Sweeney] indicated that such an arrangement sounded fair to him, and I left his office under the impression that the matters had in fact been resolved.

Sweeney says that this language is too vague to form the basis for an acceptance. It relies on *Alaska-Canadian Corp. v. Ancow Corp.*, 434 P.2d 534, 537–38 (Alaska 1967), and *Isler v. Jensen*, 382 P.2d 901, 902 (Alaska 1963), each dismissing plaintiff's claims on a motion for summary judgment, where plaintiff's only evidentiary support for an agreement was his "awareness" of it, and his only support for an essential fact was that he "felt" it to be true. In those cases we held that such allegations do not show the existence of the

underlying fact and thus are insufficient to raise a material issue of fact which would prevent summary judgment.

Unlike the plaintiffs in *Ancow* and *Jensen*, Gudenau supports his allegations of an acceptance with more concrete facts. It claims that Sweeney indicated that an offset of claims "sounded fair," and that Sweeney stopped billing it for the claims. This is more than a feeling that an accord existed. It is more than the silent nod of the head which we deemed insufficient to establish a business agreement in *Gaudiane v. Lundgren*, 723 P.2d 1267, 1273 (Alaska 1986). A trier of fact could find that Sweeney agreed to offset the claims based on the information that Gudenau has supplied.

### VI.

In conclusion, we hold that for purposes of defeating summary judgment, Gudenau has come forth with facts sufficient to estop Sweeney from relying on the statute of limitations. We also hold that Gudenau has shown facts sufficient to defeat summary judgment on his accord and satisfaction claim. Therefore, the order of the superior court is REVERSED and this case is REMANDED for trial.