**James LAJINESS, Appellant,**

v.

**H.C. PRICE CONSTRUCTION CO., National Union Fire Insurance, and Alaska Workers' Compensation Board, Appellees.**

No. S–3853.

Supreme Court of Alaska.

May 31, 1991.

Michael A. Stepovich, Fairbanks, for appellant.

Ann Stoloff Brown, Hughes, Thorsness, Gantz, Powell & Brudin, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This case arises on appeal from a superior court affirmance of two rulings of the Alaska Workers' Compensation Board ("Board").

## FACTS AND PROCEEDINGS

On April 5, 1988, Lajiness injured his right knee while working as a welder's helper for H.C. Price Construction Company ("Price"). It was anticipated by Lajiness' physician that Lajiness would be unable to return to work for a period of approximately six months. Shortly after his injury, Lajiness began receiving temporary total disability benefits. On September 12, 1988, Lajiness filed an application for adjustment of claim. Lajiness was thereafter released by his physician to return to regular work on October 1, 1988.

On October 12, 1988, Lajiness filed an affidavit of readiness for hearing. Thereafter, four prehearing conferences were held prior to the matter being scheduled for hearing before the Board. At three of the prehearing conferences, the subject of

the parties' anticipated witnesses was discussed. In conjunction with two of the conferences, the prehearing conference summaries indicate that only Lajiness and his uncle would testify on behalf of his wage rate application.[1]

At the outset of the hearing before the Board, counsel for Price objected to Lajiness' last minute attempt to have a previously unlisted witness, Jerry Saddler, testify for him on the compensation rate issue. After hearing arguments of counsel, the Board sustained Price's objection to Lajiness' attempt to call this witness.

## I. DID THE BOARD ERR IN ITS REFUSAL TO PERMIT JERRY SADDLER TO TESTIFY?

■ We hold that the Board did not abuse its discretion in rejecting Lajiness' attempt to call Saddler as a witness on his behalf.

At the time the prehearing conferences were held, 8 AAC 45.065 provided in relevant part,

PREHEARINGS. (a) In any action the board or its chairman will, in their discretion, direct the parties or their representatives to appear for a prehearing conference to consider ...

(7) other matters that may aid in the disposition of the case....

(c) Following a prehearing the chairman will issue a summary of the actions taken at the prehearing.... Unless modified, the summary controls the subsequent course of the action.

As noted above, Lajiness, at the prehearing conferences, indicated that only he and his uncle would be witnesses on his behalf at the hearing before the Board. No notice was given to Price that Jerry Saddler was to be called. Furthermore, the relevant summaries of the conference proceedings reflect that only Lajiness and his uncle would be called to testify at the Board hearing.

Given the foregoing, we conclude that the Board did not abuse its discretion in rejecting Lajiness' belated hearing day attempt to have a previously undisclosed witness testify in support of his wage rate adjustment claim.[2]

## II. DID THE BOARD ERR WHEN IT EXCLUDED LAJINESS' TWO WEEK PERIOD OF INCARCERATION FROM ITS ESTIMATE OF HIS FUTURE EARNINGS IN ORDER TO CALCULATE HIS LIKELY EARNINGS DURING THE PERIOD OF DISABILITY?

■ As noted above, Lajiness injured his knee on April 5, 1988, and was thereafter

---

1. At the initial prehearing conference, Lajiness listed himself and Joseph Arsenault as witnesses. At the hearing before the Board, Arsenault's testimony was received by way of deposition. The subject of witnesses was not discussed at the second prehearing conference.

2. We further note that on October 12, 1988, Lajiness certified to the Board that he had completed his discovery, obtained necessary evidence, and was prepared for the hearing. Such a certification is a prerequisite under AS 23.30.-110(c) to the scheduling of a hearing. The Board was entitled to rely on this certification to preclude the calling of Saddler. In this regard, AS 23.30.110(c) provides in relevant part,

Before a hearing is scheduled, the party seeking a hearing shall file a request for a hearing together with an affidavit stating that the party has completed necessary discovery, obtained necessary evidence, and is prepared for the hearing. An opposing party shall have 10 days after the hearing request is filed to file a response. If a party opposes the hearing re-

quest, the board ... shall within 30 days of the filing of the opposition conduct a prehearing conference and set a hearing date. Under 8 AAC 45.120(f), the Board was entitled to rely on both this certification and the prehearing summaries to preclude the calling of Saddler. 8 AAC 45.120(f) provides in relevant part,

Any document, including ... affidavit of readiness for hearing, ... or a prehearing summary, that is served upon the parties, accompanied by proof of service, and that is in the board's possession 20 or more days before hearing, will, in the board's discretion, be relied upon by the board in reaching a decision....

In short, we believe that in this case, the Board had discretion to exercise reasonable control over its proceedings to ensure the orderly administration of justice. *See Crawford v. Workers' Comp. App. Bd.*, 213 Cal.App.3d 156, 259 Cal.Rptr. 414 (1989) (court noted that the Board has inherent power to exercise reasonable control over all proceedings to ensure orderly administration of justice).

released by his physician to return to work on October 1, 1988. In its Decision and Order, the Board observed that

On April 10, 1988 the Alaska State Troopers arrested and charged ... [Lajiness] with driving while intoxicated and driving with a suspended license. This triggered the revocation of an earlier probation, and the employee was incarcerated in the KILA halfway house in Fairbanks from April 30, 1988 through May 9, 1988. Conviction on the April 10, 1988 charges resulted in his incarceration from December 15, 1988 through December 23, 1988.

After determining that Lajiness could have "worked for eight weeks for Houston Contracting, earning approximately $8,440.00," the Board further found that Lajiness' "two weeks incarceration would have prevented him from working at least two weeks on the North Slope, leaving earnings of $6,330.00."

In this appeal, Lajiness contends that the Board erred in excluding the two weeks in its wage rate determination because

[t]here is no indication in the record that Lajiness would have served his brief term of incarceration in the spring of 1988 but for the fact that he was disabled and not capable of working....

. . . .

The records from the criminal court furnished by Price make it clear Lajiness would have been granted work release had he been capable of working.

Price argues that the Board necessarily had to consider the nature of Lajiness' work and work history, and that it was not unreasonable for the Board to assume that Lajiness could "get into the same trouble

whether or not he was injured." In short, Price contends that in determining a compensation rate adjustment, the Board may take into consideration events which did occur and which would have impaired Lajiness' ability to earn wages if he was not disabled.[3]

Our review of the record persuades us that the Board erred when it excluded the two weeks that Lajiness was incarcerated from its estimate of Lajiness' earnings during the period of his disability. The Board's underlying rationale for its exclusion is its belief that it was reasonable to assume that Lajiness would be incarcerated for two weeks in 1988. In our view, the Board's prediction of future criminal behavior on Lajiness' part is unreasonable since it is predicated on too speculative a basis. Whether Lajiness would have violated any laws during 1988, and whether, as a result of any violation, he would have been incarcerated for any period of time during 1988, are both uncertain possibilities which cannot furnish a basis for the Board's exclusion of the two weeks worth of wages in the case at bar.

AFFIRMED in part, and REMANDED in part to the superior court with instructions to remand to the Board to recalculate Lajiness' wage rate determination after including the two weeks which were erroneously excluded.

---

**3.** More specifically, Price argues that Lajiness' "notoriously unreliable unavailability for work due to chronic alcoholism was and should have been taken into account by the Board."