Edward P. IRBY, Deceased, and Cartrie Irby, Edward P. Irby II, and Hannah C. Irby, Beneficiaries, Appellants,

v.

FAIRBANKS GOLD MINING, INC., and Old Republic Insurance Co., Appellees.

No. S–12680.

Supreme Court of Alaska.

March 20, 2009.

Chancy Croft, Chancy Croft Law Office, Anchorage, for Appellants.

Constance Cates Ringstad, McConahy, Zimmerman & Wallace, Fairbanks, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

This appeal concerns the timeliness of a March 2004 workers' compensation claim. Edward Irby disappeared in an apparent industrial accident on April 13, 1997. Irby's wife promptly petitioned the Fairbanks district court for a presumptive death certificate, but in October 1997 the district court jury determined there was insufficient evi-

dence to presume Irby dead. In 2003 Irby's son filed a second presumptive death petition; the jury in this second proceeding decided in October 2003 that Irby was presumed dead in the industrial accident. Irby's widow filed a workers' compensation claim for herself and her children in March 2004. The Alaska Workers' Compensation Board rejected Irby's employer's contention that the claim was untimely and awarded death benefits. The employer appealed to the superior court, which reversed. It held that the one-year statute of limitations, AS 23.30.105(a), began running on April 13, 2002, when Irby was presumed dead per AS 13.06.035(5), and that the March 2004 claim was therefore untimely. Applying tolling principles and because Irby's family acted reasonably in pursuing a presumptive death certificate before filing a claim for workers' compensation benefits, we hold that the claim was timely and remand for reinstatement of the board's decision and order.

## II. FACTS AND PROCEEDINGS

Edward Irby worked as a truck driver at the Fort Knox Mine, operated by Fairbanks Gold Mining, Inc. The event resulting in this workers' compensation claim happened about two days after Irby began training to operate a bulldozer. On April 13, 1997, the bulldozer Irby was operating traveled backward down a steep slope into a tailing pond and broke through the ice. The bulldozer was completely submerged. No one saw the accident, but Irby's shift supervisor, observing that Irby was not at his assigned location, discovered the accident site shortly after Irby was last seen.

Fairbanks Gold summoned emergency personnel, including the Alaska State Troopers. Divers from the troopers went into the pond within two hours of the accident, hoping to find Irby; they were unsuccessful. After the troopers ended their recovery efforts, Fairbanks Gold unsuccessfully continued to search for Irby's body throughout the summer. At the time of his disappearance, Irby had a wife and two minor children. Fairbanks Gold filed a notice of the accident with the Alaska Workers' Compensation Board in April 1997; a month later the employer filed

a notice of controversion, stating that benefits were denied pending further investigation.

In late May 1997 Irby's wife, Cartrie Irby, invoking AS 09.55.020–.060, filed a presumptive death petition in state district court. After a hearing at which eight witnesses testified, a jury decided in October 1997 that there was not enough evidence to presume that Irby had died. In December 1997 Fairbanks Gold filed a second controversion with the board; this controversion relied on the jury verdict. The following year Cartrie Irby contacted the workers' compensation insurance adjuster and the board about benefits. She received conflicting information from the board: one staff member told her that it would be "premature" to file for benefits in light of the jury verdict, but another suggested that the time for filing had already expired.

In July 2003 Irby's son, Edward II, who was by then an adult, filed a second presumptive death petition. The jury in that case decided in October 2003 that Irby was presumed to have died on April 13, 1997 in the Fort Knox Mine accident. The Bureau of Vital Statistics issued a presumptive death certificate on November 7, 2003. Cartrie filed a workers' compensation claim for death benefits in March 2004 on behalf of herself and her children. Fairbanks Gold filed an answer and controversion, incorporating its previous controversions and asserting that the statute of limitations and laches barred the claim.

An attorney entered an appearance for the Irbys on March 21, 2005 and soon asked the board to set a hearing on the claim. Fairbanks Gold petitioned the board to dismiss the claim based on the statute of limitations and laches. It alleged in later pleadings that Irby was still alive and that his dependents consequently should receive no benefits. The board held a hearing over three days on the petitions and claim. Applying a type of discovery rule to decide when the statute of limitations began to run, the board decided that Cartrie had timely filed the March 2004 workers' compensation claim and awarded her and the children benefits as well as attorney's fees and costs. The board declined to

award the Irbys a penalty for Fairbanks Gold's failure to pay benefits after the second jury verdict, finding that Fairbanks Gold had not filed its 2004 controversion in bad faith.

Fairbanks Gold appealed to the superior court, and the Irbys cross-appealed the denial of a penalty. Fairbanks Gold asked the court to stay payment of past benefits and requested expedited consideration of the issue. The superior court appeal was initially assigned to Superior Court Judge Pro Tempore Raymond M. Funk, who set an expedited briefing schedule and hearing. Fairbanks Gold peremptorily challenged Judge Funk, and the case was reassigned to Superior Court Judge Randy M. Olsen. The Irbys filed their opposition to the stay motion on September 22, 2005. On Friday, September 23, the court faxed the Irbys' attorney notice that a hearing on the motion for stay would be held before Judge Olsen on Monday, September 26 at 10:00 a.m.; it also mailed the Irbys' attorney the notice of reassignment to Judge Olsen. The Irbys' attorney attended and participated in the hearing on September 26.

On September 29 the Irbys filed a peremptory challenge of Judge Olsen. Fairbanks Gold objected to the challenge because of the Irbys' participation at the September 26 hearing. The Irbys responded that they had not received the notice of reassignment to Judge Olsen until after the hearing. Presiding Superior Court Judge Niesje J. Steinkruger denied the Irbys' peremptory challenge, ruling that they had waived it by participating in the hearing.

In April 2007 Judge Olsen reversed the board's decision and dismissed the Irbys' cross-appeal. Applying its independent judgment to the statute of limitations question and relying on *Carman v. Prudential Insurance Co.*,[1] the superior court decided that the statute of limitations for filing the workers' compensation claim, AS 23.30.105(a), began to run on April 13, 2002, five years after Irby disappeared. At that point, according to the court, Irby could be presumed dead under the probate statutes;[2] the court reasoned that a party could rely on the five-year presumptive death period to establish death without obtaining a certificate. Because the one-year statute of limitations began to run on April 13, 2002, the superior court concluded that the Irbys' March 2004 claim was untimely, and that the board should not have awarded benefits.

The Irbys appeal the court's reversal of the board's award of benefits and the board's refusal to impose a penalty on Fairbanks Gold. They also appeal the court's denial of their peremptory challenge of Judge Olsen.

## III. DISCUSSION

### A. Standard of Review

In a workers' compensation appeal from the superior court we directly review the board decision.[3] Application of the relevant statute of limitations is a legal question involving no agency expertise;[4] accordingly, we substitute our judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[5] The board's factual findings are reviewed to see if they are supported by substantial evidence.[6] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[7] Interpretation and application of the right to disqualify a judge under Alaska Civil Rule 42(c) is a question of law that we consider de novo.[8]

---

1. *Carman v. Prudential Ins. Co.*, 748 P.2d 743 (Alaska 1988) (holding that statute of limitations period for life insurance claim for death of disappeared person began at expiration of five-year presumptive death period).

2. The court cited AS 13.06.035(5).

3. *Dougan v. Aurora Elec., Inc.*, 50 P.3d 789, 793 (Alaska 2002).

4. *Bailey v. Tex. Instruments, Inc.*, 111 P.3d 321, 323 (Alaska 2005).

5. *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 946 (Alaska 2006).

6. *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000).

7. *Id.* (quoting *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997)).

8. *Cook v. Rowland*, 49 P.3d 262, 264 (Alaska 2002) (per curiam).

## B. The Irbys' Claim Was Timely.

██ Per AS 23.30.105(a), the statute of limitations for filing a claim for death benefits in a workers' compensation case is "one year after the death."[9] The workers' compensation statute and its implementing regulations do not specify the evidence a deceased worker's beneficiaries can use to prove death.[10] In addition, no regulation discusses proof of death in a case like this one, where no body has been recovered and the employer continues to assert that the employee is not in fact dead.

Fairbanks Gold argues that the one-year statute of limitations on the Irbys' death benefits claim ran out on either April 13, 1998—one year after the accident—or April 13, 2003—one year after expiration of the five-year presumptive death period specified in AS 13.06.035(5). Fairbanks Gold asserts that the board could determine that Irby was dead independently of a jury verdict. The Irbys maintain that their claim was timely because they filed it within one year of the date the second jury found that Irby was presumed to have died in the industrial accident.

 We hold that the doctrine of equitable tolling applies and that the Irbys' claim was timely. Use of equitable tolling should come as no surprise in the context of an administrative proceeding.[11] We can affirm a judgment on any appropriate basis, including grounds not relied on or raised in the lower tribunal.[12] The principle that we can affirm on alternative grounds applies "only to issues of law that find support in settled facts" and "does not extend to new theories that would normally be resolved by discretionary powers traditionally reserved for trial courts—powers relying on case-specific consideration of disputed or disputable issues of fact."[13]

After briefing in this court was completed, the Irbys filed a citation of supplemental authority per Alaska Rule of Appellate Procedure 212(c)(12) to further support equitable arguments they presented to both the board and the superior court. The citations raised equitable tolling as an alternative basis for affirming the board's decision. Although neither the board nor the superior court considered equitable tolling in evaluating the Irbys' claim, the elements of equitable tolling parallel the elements of issues directly raised by the parties and considered below. The Irbys argued estoppel in the alternative before the board and the superior court; Fairbanks Gold raised the issue of prejudice in its defense of laches and in responding to the Irbys' equitable arguments. The employer had an opportunity to dispute the Irbys' dili-

---

9. AS 23.30.105(a) states:

 The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of the employee's disability and its relation to the employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury, and the right to compensation for death is barred unless a claim therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment of benefits under AS 23.30.041, 23.30.180, 23.30.185, 23.30.190, 23.30.200, or 23.30.215. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

10. The board wrote to the Alaska Bureau of Vital Statistics in May 1997, shortly after Fairbanks

Gold filed the notice of injury, seeking a copy of a death certificate for Irby. Unlike the board, the Social Security Administration has regulations governing both proof of death and presumptive death. 20 C.F.R. §§ 404.720–.721 (2007).

11. *See Abbott v. State*, 979 P.2d 994 (Alaska 1999) (applying federal equitable tolling doctrine to Jones Act claim following workers' compensation claim); *see also Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1086–87 (Alaska 1989) (holding that Department of Labor proceedings are alternative proceedings for equitable tolling purposes).

12. *Maness v. Daily*, 184 P.3d 1, 7 (Alaska 2008) (citing *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961)); *see also Bouse v. Fireman's Fund Ins. Co.*, 932 P.2d 222, 236 (Alaska 1997) (noting that appellate court can affirm on different basis in administrative appeal).

13. *Vaska v. State*, 135 P.3d 1011, 1019 (Alaska 2006).

gence in bringing their claim and the reasonableness of the Irbys' procedural choices. Additionally, the employer litigated the issue of prejudice. The board made factual findings that serve as the foundation of a legal ruling on equitable tolling. The board found that Fairbanks Gold "had ample, timely opportunity to investigate and defend against any possible claims by the [Irbys]." Given the certainty that the doctrine of equitable tolling is satisfied and the absence of a genuine factual dispute material to its application, we rely on equitable tolling to affirm the board decision.

We have previously stated that even though the defense of statute of limitations is a legitimate defense,[14] we look on it with disfavor and "will strain neither the law nor the facts in its aid."[15] We have identified several policies served by limitations periods: providing defendants with notice of the nature of adverse claims and barring plaintiffs who have slept on their rights,[16] as well as protecting against prejudice from stale claims.[17] Here, Fairbanks Gold had notice of the claim: it indicated in a 1997 letter to its workers' compensation carrier that the first jury verdict stayed Cartrie's claim for benefits and that the claim would "go into excess" at some point. In 1998 its workers' compensation carrier instructed Fairbanks Gold to leave a reserve on that claim. The evidence also suggests that the Irbys did not sleep on their rights. Cartrie promptly filed the first presumptive death petition only seven weeks after the accident. In 1998 Cartrie contacted Fairbanks Gold, the workers' compensation adjuster, and board staff seeking advice about pursuing a claim for benefits and infor-

mation about reports or other evidence related to the accident. In 2000 she again contacted Fairbanks Gold to see if it had any new information about the accident. The record also shows that the Irbys contacted the Fairbanks court in 1999 and again in 2002 about filing another presumptive death petition. Finally, nothing indicates that any evidence became more stale between the running of the five-year presumptive death period and the time Edward II filed the second presumptive death proceeding.

▇▇▇ Under the doctrine of equitable tolling, when a party has more than one legal remedy available, the statute of limitations is tolled while the party pursues one of the possible remedies.[18] In *Gudenau v. Sweeney Insurance, Inc.*, we adopted a three-part test for equitable tolling: (1) the alternative remedy must give notice to the defendant; (2) the defendant must not be prejudiced; and (3) the plaintiff must have acted reasonably and in good faith.[19] The initial remedy must be pursued in a judicial or quasi-judicial forum.[20] A party is generally entitled to the full statutory period after the circumstances which justify equitable tolling abate.[21]

Because the statute of limitations on workers' compensation death benefits runs from the time of death[22] and because Fairbanks Gold insisted that Irby was still alive, the Irby beneficiaries needed to establish a date of death or presumed death.[23] The alternative legal remedies we discuss are different ways to establish the fact of Irby's death. Here, Cartrie had more than one way to pursue a finding of Irby's death. To obtain a presumptive death certificate from the state,

14. *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 854 (Alaska 1991) (citing *Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988)).

15. *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 886 (Alaska 2004) (quoting *Fred Meyer v. Adams*, 963 P.2d 1025, 1027 n. 6 (Alaska 1998)).

16. *Id.* at 886.

17. *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 434 (Alaska 2001) (citing *West v. Buchanan*, 981 P.2d 1065, 1068 (Alaska 1999)).

18. *Gudenau v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987).

19. *Gudenau v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987).

20. *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989).

21. *Id.* at 1088 n. 6 (citing *Gudenau*, 736 P.2d at 769 n. 8).

22. AS 23.30.105(a).

23. A finding of presumptive death permits a missing person's estate to be probated under laws applicable to decedents' estates. AS 09.55.050.

she could either file a presumptive death petition in district court[24] or, after five years had elapsed, begin a superior court proceeding, presumably in probate.[25] She chose the first alternative. It is less clear whether, without first obtaining a presumptive death certificate, she could have filed a workers' compensation claim with the board and asked the board, rather than a court, to determine that Irby had died. Here, the board did not determine that it had exclusive jurisdiction to determine the fact of Irby's death.[26] It permitted the Irbys to introduce the presumptive death certificate into evidence and gave Fairbanks Gold the opportunity to present evidence that Irby was not in fact dead. Even if the board had jurisdiction to find that Irby was in fact dead (in addition to finding that his death was the result of an industrial accident), Cartrie had other avenues available to establish that he had died, namely filing a presumptive death petition or a probate proceeding.

We first consider the reasonableness of the Irbys' actions. Relying on AS 09.55.020–.060, Cartrie initially chose to file a presumptive death petition in district court shortly after Irby's disappearance. Her actions were reasonable: a district court presumptive death hearing is the only way to obtain a certificate of presumptive death without waiting five years,[27] and, given the circumstances of Irby's disappearance, it was not unreasonable for her to think that a jury would find that he had died at the mine.[28]

After the first jury decided that the evidence was insufficient to presume that Irby was dead, Fairbanks Gold filed its second controversion with the board, specifically relying on the jury verdict. Because the 1997 verdict did not establish the presumptive death, and because Fairbanks Gold took the position that as a result of that verdict no workers' compensation benefits were payable, Cartrie cannot be faulted for failing to file a claim for benefits after the jury returned its 1997 verdict. In effect, given the jury's verdict in 1997, the time in which to file a claim was not yet running.[29]

In addition, when Cartrie contacted the board in 1998, she received conflicting advice. One staff member suggested that the statute of limitations had already run, while a second indicated that filing for death benefits could be "premature." The insurance adjuster offered her no information about pursuing a claim, even though she had no attorney at the time. Based on Fairbanks Gold's controversion and the conflicting advice she received from the board, it was reasonable for Cartrie not to file a workers' compensation claim immediately.

It was also reasonable for the Irbys to wait for the five-year presumptive death period to pass before taking further action. The parties agree that there was no time limit by which the Irbys needed to refile a presumptive death petition.[30] Here, Edward II filed the second presumptive death petition about six years after Irby's disappearance. The one-year delay in filing beyond the five-year presumptive death period was not per se unreasonable. As we noted earlier, the Irbys inquired of Fairbanks Gold and the court during the time between the first jury verdict and the filing of the second presumptive death petition.

 Under the doctrine of equitable tolling, the first proceeding must give notice to

---

**24.** AS 09.55.020–.060; Alaska Dist. Ct. R. Civ. P. 32; 7 Alaska Administrative Code (AAC) 05.865–.870 (2008).

**25.** AS 13.06.035(5); Alaska Dist. Ct. R. Civ. P. 32(e); Alaska R. Prob. P. 6; 7 AAC 05.440, .865–.870 (2008).

**26.** We do not decide whether the board has jurisdiction to determine that a missing worker is dead.

**27.** Alaska Dist. Ct. R. Civ. P. 32(e).

**28.** Fairbanks Gold does not allege any bad faith by Edward II or Cartrie, and there is no evidence to support such an allegation.

**29.** *See* 22A AM.JUR.2D *Death* § 423 (2003) (stating that life is conclusively presumed to continue until contrary is shown by sufficient proof).

**30.** *Cf.* AS 09.10.100 (providing general statute of limitations); AS 13.16.040(a)(1)-(2) (extending permissible time for filing probates for absentees).

the defendant.[31] Fairbanks Gold had ample notice of the circumstances of the accident, the two presumptive death petitions, and the workers' compensation claim. Fairbanks Gold conducted its own investigation of the accident in 1997 and had copies of the investigation of the Alaska State Troopers and the reports of the United States Department of Labor Mine Safety & Health Administration and the State of Alaska Occupational Injury Prevention Program. An attorney for Fairbanks Gold attended both presumptive death hearings. Several Fairbanks Gold employees testified at the first presumptive death hearing, and a former employee testified at the second presumptive death hearing. As we noted already, Fairbanks Gold interpreted the first verdict as deferring the possibility of a claim. Cartrie's continuing inquiries should also have alerted Fairbanks Gold that the family was not forgoing a claim for benefits. The board found that Fairbanks Gold had "ample, timely opportunity to investigate and defend against possible claims by the beneficiaries." This finding is fully supported by the record.

▮ Finally, equitable tolling requires that the defendant not be prejudiced.[32] Fairbanks Gold asserts that because between 1997 and 2004 two important witnesses died and another moved out of state, it was prejudiced by the Irbys' delay in filing for benefits. It does not identify the witnesses. Before the board, Fairbanks Gold argued that it was prejudiced because of the deaths of Steve Bonham, who testified at the first presumptive death hearing, and Roger Lucas, the Fairbanks Gold employee who investigated the accident and wrote the incident report. But the record reflects that Lucas died in 1999, before the five-year presumptive death period expired.[33] Two other Fairbanks Gold employees testified at the first presumptive death hearing, and both participated in the later proceedings. One testified in person at the board hearing, and the other testified by telephone at the second presumptive death hearing. Fairbanks Gold alleges additional prejudice because of changes in its ownership but does not show how an additional eleven-month delay (from April 13, 2003 to March 1, 2004) prejudiced it.

The board's finding that Fairbanks Gold had ample opportunity to investigate and defend the claim indicates that Fairbanks Gold was not prejudiced by any delay in pursuing a presumptive death certificate before filing a claim for death benefits.

*Carman v. Prudential Insurance Co.* does not foreclose the equitable tolling principles we apply here.[34] There is no indication there was any dispute in *Carman* about whether the missing person was actually still alive and had engineered his disappearance. The statutory presumption of death is generally considered a rebuttable presumption,[35] and Fairbanks Gold insisted that Irby was still alive. Moreover, there was no attempt in *Carman* to obtain a prompt determination of death,[36] unlike the situation here. Nor was there any indication of relatively diligent inquiries by Ruth Carman that were either unsuccessful or discouraged.[37] In any event, she did not file suit until nearly fifteen years after her husband disappeared while piloting an airplane.[38]

We conclude that there are no genuine factual disputes as to any of the elements of equitable tolling and that the parties had a

**31.** *Gudenau v. Sweeney Ins., Inc.,* 736 P.2d 763, 768 (Alaska 1987).

**32.** *Id.* at 768.

**33.** Fairbanks Gold did not give a date of death for Bonham.

**34.** *Carman v. Prudential Ins. Co.,* 748 P.2d 743 (Alaska 1988).

**35.** 22A Am.Jur.2d *Death* § 435 (2003); *see also Ahn v. Kim,* 145 N.J. 423, 678 A.2d 1073, 1081–82 (1996) (discussing presumption of death and evidence to rebut presumption in wrongful death case); *In re Geiger,* 3 Cal.App.4th 127, 135–36, 4 Cal.Rptr.2d 252, 256–57 (1992) (noting that statutory presumption of death can be rebutted).

**36.** *Carman,* 748 P.2d at 745 (noting that widow did not explain nearly fifteen year delay in making claim).

**37.** In addition to the contacts we have already noted between Cartrie and the board, it appears that Edward II contacted the Fairbanks court in 2002 about filing a second presumptive death petition and was discouraged from doing so.

**38.** *Carman,* 748 P.2d at 743, 745.

fair opportunity to dispute parallel issues before the board. The Irbys satisfy the elements of equitable tolling: the Irbys' pursuit of a presumptive death certificate and related inquiries gave adequate notice of the claim to Fairbanks Gold; Fairbanks Gold was not prejudiced; and the Irbys acted reasonably and in good faith in pursuing a presumptive death certificate before filing their claim for death benefits, particularly in light of Fairbanks Gold's December 1997 controversion. Their claim was filed within a reasonable period of time for equitable tolling purposes because it was filed within one year of the jury verdict which found that Irby was presumed to have died in the April 1997 accident.

### C. The Superior Court Properly Denied the Peremptory Challenge of Judge Olsen.

The Irbys also appeal Presiding Superior Court Judge Steinkruger's denial of their motion to peremptorily challenge Judge Olsen. They assert that the hearing on the motion for stay was not a hearing on the merits that waived their rights under Alaska Civil Rule 42(c) because no factual issues were presented and decided by Judge Olsen.

Alaska Civil Rule 42(c)(4) provides:

A party waives the right to change as a matter of right a judge who has been permanently assigned to the case by knowingly participating before that judge in:

(i) Any judicial proceeding which concerns the merits of the action and involves the consideration of evidence or of affidavits. . . .

We hold that the Irbys' participation in the September 26 hearing on the stay motion waived their right to peremptorily challenge Judge Olsen. The Irbys argued the merits of the case extensively in their opposition and filed many merits-related exhibits with their opposition. Presumably the superior court considered the exhibits in deciding the motion. A motion for stay in a workers' compensation case is similar to a motion for a preliminary injunction,[39] and it necessarily involves some consideration of the merits of a case.

Participation in a hearing must also be "knowing" for waiver to occur.[40] Here, even though counsel did not actually receive notice of the permanent assignment until after the hearing, he is deemed to have been on notice of the assignment.[41] The case was reassigned to Judge Olsen before the contested hearing. The Irbys' attorney had every reason to know in advance that issues of substance would be considered at the hearing; he had filed a lengthy and detailed opposition to the stay motion and knew that the hearing would not involve routine or uncontested matters. He traveled from Anchorage to Fairbanks to participate in the hearing. Under these circumstances, counsel potentially interested in challenging the judge who will be presiding over a scheduled hearing has ample reason to determine by inquiring of court staff or reviewing the court file before the hearing whether a permanent assignment has already been made; if he does not, he is presumed to have known of the assignment.

Because the Irbys knowingly participated in a hearing before Judge Olsen that required some consideration of the merits of the action and the hearing involved the consideration of evidence, Judge Steinkruger did not err in denying the Irbys' peremptory challenge of Judge Olsen.

### D. The Board Permissibly Denied the Irbys' Penalty Request.

The Irbys also challenge the board's denial of their request for a penalty against Fairbanks Gold for failing to pay benefits to them beginning in October 2003, when the second jury found that Irby died in the mining accident. The Irbys sought a penalty under AS 23.30.155(e), which requires that compensation be paid within seven days unless a notice of controversion is

---

**39.** *Olsen Logging Co. v. Lawson,* 832 P.2d 174, 175 (Alaska 1992).

**40.** *Tunley v. Municipality of Anchorage Sch. Dist.,* 631 P.2d 67, 72–73 (Alaska 1981).

**41.** We are referring to our Standing Advisory Committee on the Rules of Civil Procedure the question of modifying or clarifying Rule 42(c) to specify when participation in a hearing can serve to waive a party's right to peremptorily challenge a judge, even if the party is unaware that the judge has been permanently assigned to the case.

filed. A controversion must be made in good faith to protect the employer from a penalty.[42] Here, the board found that the case was one of first impression, either because of the issue of whether a controversion filed after the issuance of a presumptive death certificate was made in good faith, or because of the unsettled legal questions about the interaction of a presumptive death certificate and the statute of limitations in a workers' compensation case. Partly as a result of the novel legal questions involved, the board stated that "we cannot find the employer did not act in good faith in filing its controversion." [43]

It is not clear from the board's decision whether its determination regarding the controversion was a fact-based or a legal decision. The Irbys contend that Fairbanks Gold "had not one shred of evidence that Edward Irby was alive" after the second presumptive death hearing, To the extent the board based its finding of good faith on rumors of Irby's survival, rumors or speculation alone cannot serve as a basis for a good faith controversion.[44] But the 2004 controversion was based primarily on legal or equitable defenses—laches and the statute of limitations—rather than factual issues. Either defense could serve as the good faith basis for a controversion because a good-faith controversion can be based on a legal defense.[45] Undisputed evidence showed that the Irbys filed their workers' compensation claim more than a year after the accident. If the Irbys had presented no evidence or argument justifying their filing of the claim at the time they did, the board might have accepted Fairbanks Gold's legal argument that the statute of limitations had run or its equitable argument that it had been prejudiced by the length of time between the accident and the claim filing. Either defense could have resulted in denial of the Irbys' claim. Fairbanks Gold's reliance on the timeliness defenses was unsuccessful, but was not legally implausible. Because Fairbanks Gold raised colorable legal arguments that were based in part on undisputed facts, we affirm the board's decision that Fairbanks Gold's 2004 controversion was not made in bad faith.

## V. CONCLUSION

The superior court judgment, which reversed the Decision and Order of the board, is REVERSED. We REMAND with directions to reinstate the September 12, 2005 Final Decision and Order of the board. We AFFIRM the board decision not to impose a penalty on Fairbanks Gold. We AFFIRM Judge Steinkruger's denial of the Irbys' peremptory challenge of Judge Olsen.

WINFREE, Justice, not participating.

---

**42.** *Harp v. ARCO Alaska, Inc.*, 831 P.2d 352, 358 (Alaska 1992).

**43.** The board's decision reads, in relevant part: We consistently require an employer or insurer to have specific evidence on which to base a controversion. We have found that reasonable minds can differ in the legal interpretation of discrepancies in the evidence available, and such discrepancies can be significant enough to support a good faith controversion.
We find the instant case is one of first impression in Alaska. Given that the effect of a Presumptive Death Certificate had not yet been addressed in our state, given that the extended attempts to find the body had not been successful, and given the rumors of the employee's survival, we cannot find that the employer did not act in good faith in filing its controversion. Accordingly, we conclude no penalty is due. . . .
(Citations omitted.)

**44.** *Cf. Lajiness v. H.C. Price Constr. Co.*, 811 P.2d 1068, 1070 (Alaska 1991) (holding that board's factual prediction was speculative and could not provide basis for board's calculation of wage rate).

**45.** *See Harp*, 831 P.2d at 358 (citing *Kerley v. Workmen's Comp.App. Bd.*, 4 Cal.3d 223, 93 Cal. Rptr. 192, 481 P.2d 200, 205 (1971)). Our citation to *Kerley* indicates that doubt from a legal standpoint is a permissible basis for a controversion. *Id. See also Thoeni v. Consumer Elec. Servs., Inc.*, 151 P.3d 1249, 1259 (Alaska 2007) (indicating that refusal to sign board releases or attend required medical exam is basis for good faith controversion). The board has interpreted *Harp* as permitting controversions based on the statute of limitations. *See Booth v. Golden Van Lines*, AWCB Decision No. 99–0084 (April 16, 1999) (finding controversion based on statute of limitations justified). The Irbys do not argue here that controversions based on legal issues are impermissible.