Gary L. JARVILL, Appellant
and, Cross–Appellee,

v.

PORKY'S EQUIPMENT, INC., and
Norman T. Haag, a/k/a Todd Haag,
Appellees and Cross–Appellants.

Nos. S–12457, S–12527.

Supreme Court of Alaska.

Aug. 1, 2008.

Brian E. Hanson, Pearson & Hanson LLC, Sitka, for Appellant/Cross–Appellee.

Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellees/Cross–Appellants.

Before: FABE, Chief Justice, MATTHEWS, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Gary Jarvill alleges that a design defect in the boat he purchased from Porky's Equipment, Inc. caused it to sink in its harbor slip less than three years after purchase. Jarvill appeals the superior court's ruling that the statute of limitations bars his product defect and negligence claims. Because the evidence fails to support the trial court's finding that Jarvill's cause of action accrued—and the statute of limitations began to run—before the boat sank, we reverse the trial court's dismissal on statute of limitations grounds. We affirm the trial court's holding that Porky's employee, Todd Haag, acted as the company's agent in contracting to construct the boat for Jarvill, and the trial court's admission of evidence from Jarvill's marine surveyor regarding the boat's allegedly defective design and construction.

## II. FACTS AND PROCEEDINGS

### A. Facts

Gary Jarvill teaches high school and runs a charter fishing business during his summer vacations. In the fall of 1999 he began looking for a new boat. Jarvill desired an aluminum "Packman" style boat of the type built by the Munson Company of Burlington, Washington. The Munson Company, however, could not make delivery quickly enough, and Jarvill looked elsewhere.

Jarvill's son, an employee of Porky's, told him that the company had recently built a boat using a Munson design. Jarvill went to Porky's and spoke with Todd Haag, a foreman for Porky's. Haag explained that he had the rights to build two Munson design boats in exchange for work that his crew had done on a Munson boat. Haag had completed one of the boats for Porky's president, Brian Bickar, and Haag showed it to Jarvill. Haag and Jarvill discussed a list of specifications that Jarvill had written, and Haag told Jarvill that he could sell him a Munson design boat, on which he had already begun construction.

In November 1999 Haag and Jarvill agreed that for $90,000 Haag would build a boat meeting Jarvill's specifications. To finalize the agreement, Jarvill wrote a check out to Todd Haag for $7,000. In order to secure financing, Jarvill retained Jim Steffen, a boat surveyor, to verify the boat's value as collateral. Steffen surveyed the boat three times during its construction and once after construction was complete. Steffen also performed a damage report after the boat, christened the "Sea-J," sank on January 5, 2003.

Steffen maintains that, from the beginning, he expressed concern that the 3/16″ gauge aluminum sheeting on the Sea-J's hull was too thin. He testified that during his first survey he discussed this concern with Haag. This led Steffen to note in his first report, that "[t]hough the hull shell plating is light for a vessel of this size, the framing schedule has been tightened up in order to provide what appears to be adequate stiffness." Steffen repeated this language in his second report. But as construction on the boat proceeded, it did not include the internal stiffening work that Steffen thought to be necessary. In his third report, Steffen wrote that the hull plating "is considered adequate for structural appearances given the presence of external hull stiffeners."

Steffen testified that, before writing this report, he told Jarvill and Haag that he thought the boat would need external stiffeners because of the thin plating. Haag declined to mount external stiffeners on the

boat's frame, reasoning that he had adequately welded the hull for stiffness and that external stiffeners would "rob the performance of the hull." When Steffen conducted a final "in-water" survey of the boat, he verified that the hull plating was "adequate for judicious use given the presence of external hull stiffeners." Steffen testified that he knew, however, that Haag had not installed any external hull stiffeners on the boat.

During the night of January 5, 2003, about two and a half years after its delivery, the SEA-J sank in its harbor slip. Mr. Steffen surveyed the damage and determined that stress fractures on the bottom of the hull had caused the boat to sink. Steffen detected "no evidence of an impact in the affected area," and concluded that the "[c]racks are due to light shell plate thickness and marginal internal framing, fatigued by stresses encountered during normal vessel operations."

On January 30, 2003, Jarvill sent Porky's president Brian Bickar "notice that the cause of the recent damage to the vessel 'SEA-J' which sank at the dock has been attributed to a manufacturing defect." A few days later, Bickar wrote back on behalf of Porky's to explain that "Todd Boats," rather than Porky's, had "constructed the boat," and that Porky's "only provided the location for the boat to be built in." Bickar thus suggested that Jarvill contact Todd Haag. He also offered to mail Jarvill "a copy of the original survey done by Jim Steffen."

### B. Proceedings

On November 17, 2004, Jarvill filed suit in superior court against Porky's and Haag, claiming product defect, negligence, breach of implied warranty, unfair trade or business practices, and breach of contract. After motion practice, claims of product defect, negligence, and unfair trade practices remained. Starting on February 7, 2006, Superior Court Judge Larry C. Zervos held a bench trial. After Jarvill presented his case, Porky's moved under Alaska Civil Rule 41(b) to dismiss all counts, arguing that the statute of limitations barred the product defect and negligence claims and that Jarvill failed to prove an unfair trade practices violation.

The superior court denied Porky's motion, reasoning that Jarvill did not know about the defective hull plating on the boat until it sank. Just before closing arguments, however, Porky's asked the court to reconsider its ruling on the Rule 41(b) motion. In the motion for reconsideration, the company presented the theory that Steffen's knowledge of the defective hull should be imputed to Jarvill because Steffen had inspected the boat as Jarvill's agent. Because Steffen was aware that Haag had not installed external stiffeners or taken any other measures to compensate for the thin hull plating, Porky's argued, he had notice of the boat's alleged defect. The court agreed, and after considering additional briefing on the agency relationship between Jarvill and Steffen, it reversed its prior ruling and held that the statute of limitations barred Jarvill's negligence and product defect claims.[1]

Although the superior court did not reach the merits of Jarvill's tort claims, it found that "Mr. Steffen knew that the boat was defective on June 10, 2000 when he inspected it just before the boat was turned over to Mr. Jarvill for his use." Therefore, according to the trial court, the two-year limitations period on Jarvill's tort claims[2] expired before the SEA-J sank on January 5, 2003. Specifically, the trial court held that at the time of Steffen's third inspection of the SEA-J he had information "sufficient to alert a reasonable person to begin an inquiry to protect his rights."[3] The trial court reasoned that Steffen knew that the boat "was defective then," and that "the boat's eventual sinking was directly related to the defect and negligent construction." The trial court concluded that "[a]lthough Mr. Jarvill's harm on June 10, 2000 was not as great then as it would be when the boat sank, his agent had all the information available then to bring a suit on

---

1. The court dismissed Jarvill's unfair trade practices claim on the merits. Jarvill does not appeal that ruling.

2. *See* AS 09.10.070.

3. *Waage v. Cutter Biological Div. of Miles Labs., Inc.,* 926 P.2d 1145, 1148 (Alaska 1996).

the theories he eventually raised in this case." Jarvill appeals.

## III. STANDARD OF REVIEW

 We uphold a superior court's factual findings unless they are "clearly erroneous," meaning that our review of the record leaves us with "a definite and firm conviction that a mistake has been made."[4] In reviewing "a lower court's application of law to undisputed facts," we apply our independent judgment.[5] We review the trial court's admission of opinion testimony under the abuse of discretion standard.[6]

## IV. DISCUSSION

### A. The Superior Court Erred in Holding that the Statute of Limitations Barred Jarvill's Tort Claims.

Jarvill had to file his tort claims of negligence and product defect within the two-year statute of limitations provided in AS 09.10.070.[7] Jarvill's boat sank on January 5, 2003, and he filed suit on November 17, 2004. Under the two-year limitations statute, Jarvill's claim is timely unless it accrued before November 17, 2002.[8] Jarvill maintains that his claims did not accrue until the SEA-J sank on January 5, 2003. Porky's defends the superior court's determination that Steffen's inspection of the boat on June 10, 2000 triggered the limitations period. But because the record indicates that Jarvill's tort claims did not accrue until the boat sank, we reverse.

Steffen claimed at trial that he suspected early on that Haag was using inappropriately thin sheet metal on the hull. Steffen testified that he expressed this concern to Jarvill and possibly to Haag after he performed his April 2000 survey. Haag reassured Jarvill about the hull, telling him that the external stiffeners proposed by Steffen were unnecessary and would "rob the performance of the hull." In his next report in June 2000, Steffen wrote that "[h]ull plating, considered light for a vessel of this size, is considered adequate for structural appearances given the presence of external hull stiffeners." Steffen declined to make an express recommendation in the report that Haag install external stiffeners, even though he knew that Haag had not done so. In a subsequent survey report, after the boat was in the water, Steffen again concluded that the hull plating was "considered adequate for judicious use given the presence of hull stiffeners."

The superior court determined that "Mr. Steffen did not report a defect that should have been reported." It went on to reason:

> Mr. Steffen knew about the problems with the boat on June 10, 2000, and he knew it was defective then. The cause of the boat's eventual sinking was directly related to the defect and negligent construction. Although Mr. Jarvill's harm on June 10, 2000 was not as great then as it would be when the boat sank, his agent had all the information available then to bring a suit on the theories he eventually raised in this case.

Therefore, the superior court concluded, the statute of limitations barred Jarvill's claims. We disagree.

 We have previously observed that the ordinary operation of the statute of limitations looks to "the date on which the plaintiff incurs injury."[9] We have "applied this rule literally to bar any action initiated more than two years after the plaintiff or his insured property was tortiously damaged."[10]

---

**4.** *John's Heating Serv. v. Lamb*, 129 P.3d 919, 922 (Alaska 2006).

**5.** *Id.*

**6.** *See Schymanski v. Conventz*, 674 P.2d 281, 286–87 (Alaska 1983).

**7.** Specifically, AS 09.10.070(a) provides:

Except as otherwise provided by law, a person may not bring an action ... (2) for personal injury or death, or injury to the rights of anoth-

er not arising on contract and not specifically provided otherwise ... unless the action is commenced within two years of the accrual of the cause of action.

**8.** *See, e.g., Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1270 (Alaska 2001).

**9.** *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987) (quotations omitted).

**10.** *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 766 (Alaska 1987).

And we have also employed the discovery rule to toll the statute of limitations "until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action." [11] But the discovery rule only extends the statute of limitations; it does not shorten it.

■ The superior court chose June 10, 2000 as the date of Jarvill's injury for the purposes of his negligence and product defect claims. This marked the date of Jim Steffen's third survey of the SEA–J, shortly after Haag completed construction and before the boat had entered the water. But while Steffen's survey on that date may have triggered the limitations period for a breach of contract claim, we cannot agree that the underlying injury alleged in Jarvill's product defect and negligence claims occurred at the time of delivery. Jarvill's complaint alleged that the SEA–J "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." More specifically, it claimed that the "boat failed to perform when the hull bottom surface cracked causing the boat to sink." Nothing in the record suggests that the cracks caused by the boat's alleged defect, or any other performance failures, manifested themselves prior to the date that the SEA–J sank.

To the contrary, the SEA–J performed as Haag promised, and any tortious injury to Jarvill remained a matter of speculation. At the end of the boat's first summer in the water, Jarvill collided with a log. Worried that the collision may have damaged the hull, Jarvill took the boat to Haag for an inspection. Haag repaired a dent in the hull. He filled the boat with water to check for leaks. He detected no signs of inadequacy in the SEA–J's hull plating, and he reported that the SEA–J "didn't have any apparent leaks," and that he had "fixed the dent."

Jarvill further testified that he took the boat out frequently, but that he never had any indication that the SEA–J was taking on water. He testified that he took his family out in the SEA–J over the Christmas holiday immediately prior to the boat's sinking on January 5 and that the SEA–J operated without any sign of malfunctioning then. Porky's intimates that Jarvill might have acted earlier to save the boat from sinking on the night it went down. But the company does not allege that Jarvill should have discovered the stress fractures developing on the hull or any other such performance failure during his operation of the boat in the weeks and months preceding its submersion.

Porky's instead argues that Jarvill suffered the injury of receiving a defective boat, and that his agent, Steffen, had notice of that injury. Porky's argues that the discovery rule governs Jarvill's claim, quoting our decision in *John's Heating Service v. Lamb:*[12] "Injury often occurs simultaneously with the corresponding act of negligence that causes it. However, when the injury is not apparent at the time of the negligent act, the discovery rule applies." [13] Porky's contends that Jarvill "reasonably should have discovered" [14] all of the elements essential to his negligence and products liability claims, including harm. According to Porky's, Jarvill's "harm, as of June 2000, was the boat was not serviceable which could be remedied by incurring the cost to add external stiffeners."

Porky's reliance on *John's Heating Service* is misplaced. In that case, homeowners, the Lambs, sued John's Heating Service for its alleged negligent failure to repair their furnace or to warn them that it was leaking dangerous carbon monoxide fumes into their home.[15] John's Heating Service argued that the statute of limitations should bar the Lambs' suit because they filed it over two years after the company conducted its service call.[16] The trial court rejected the statute of limitations defense. We remanded, however, for a determination whether "the Lambs knew or should have known that they

11. *Id.*

12. 46 P.3d 1024 (Alaska 2002).

13. *Id.* at 1031 n. 14.

14. *Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288, 291 (Alaska 1988).

15. 46 P.3d at 1028–29.

16. *Id.* at 1031–32.

were being exposed to carbon monoxide as early as [the date of the service call]." [17] We reasoned that summary judgment on the statute of limitations question was not appropriate because John's Heating Service had presented evidence that the Lambs associated the malfunctioning furnace with headaches that they had been suffering, that after the service call the furnace continued to blow soot through the house, and that a fuel smell persisted in the house.[18]

Porky's attempts to draw a parallel between this evidence and Steffen's misgivings about the thin sheet metal on the SEA-J's hull. But such an analogy overlooks a more basic distinction between the cases. Unlike the Lambs, Jarvill was not harmed by the alleged tortious action in this case until long after he had completed his purchase. The essence of Porky's argument then is that Jarvill's cause of action accrued before all of its essential elements had ripened. But our previous decisions do not suggest such a rule.

■ Although we have not decided a case precisely like this one, we have held that the limitations period in AS 09.10.070 ordinarily begins to run "on the date on which the plaintiff incurs injury." [19] For example, in *Austin v. Fulton Insurance Co.*,[20] we held that claims against an insurer for negligence in not issuing a policy covering earthquake loss did not ripen until the quake had struck. Therefore, the plaintiff had two years from the time of the earthquake to file under AS 09.10.070.[21] More generally, we have held that "[s]tatutes of limitations prescribing a relatively short period of time," as AS 09.10.070 does, "should be construed narrowly." [22] And we have recognized that "while the defense of the statute of limitations is a legitimate one, it is not generally favored by the courts." [23] Nothing in these cases suggests the peculiar rule that Porky's would have us apply to product defect and negligence claims.

The case law from other jurisdictions further persuades us that Porky's argument must fail. That jurisprudence makes clear that for a product defect claim like Jarvill's, "the statute [of limitations] starts to run and the cause of action accrues when the injury or damage is suffered and not at some earlier time of sale, delivery, construction, installation, etc." [24] This follows from the very nature of the plaintiff's claim, because "if no damage resulted from defendant's negligence, then there would be no right of action." [25]

Porky's argues that Jarvill did suffer damages following Steffen's June 2000 inspection, in the form of receiving a boat that "was not serviceable." But that argument conflates the analysis of Jarvill's tort claims with that of contract claims that were resolved by the parties' motion practice. The date of Steffen's June 10, 2000 inspection marks little more than Jarvill's acceptance of the boat's delivery. Adopting that event as the trigger for AS 09.10.070 would lead us to "the anomalous and grossly unfair result of the statute being held to have run and the bar becoming completed even before the hapless

---

17. *Id.* at 1032–33.

18. *Id.*

19. *Gudenau*, 736 P.2d at 766.

20. 444 P.2d 536 (Alaska 1968).

21. *Id.* at 538–40.

22. *Goodman v. Fairbanks N. Star Borough Sch. Dist.*, 39 P.3d 1118, 1120 (Alaska 2001).

23. *Safeco Ins. Co. of Am. v. Honeywell, Inc.*, 639 P.2d 996, 1001 (Alaska 1981).

24. 1A STUART M. SPEISER, ET AL., THE AMERICAN LAW OF TORTS § 5:35, at 380–81 (1983); *see also Hunter v. Sch. Dist. of Gale–Ettrick–Trempealeau*:

> It is the fact and date of injury that sets in force and operation the factors that create and establish the basis for a claim of damages. It is true that, without an act of negligence, no claim for damages based on negligence can arise. It is likewise true that, without the result of injury, no claim for damages based on negligence can be asserted, or at least successfully asserted. Both the act of negligence and the fact of resultant injury must take place before cause of action founded on negligence can be said to have accrued.

97 Wis.2d 435, 293 N.W.2d 515, 519 (1980) (quotations and emphases omitted).

25. *West Am. Ins. Co. v. Sal E. Lobianco & Son Co.*, 69 Ill.2d 126, 12 Ill.Dec. 893, 370 N.E.2d 804, 807 (1977).

plaintiff suffered injury or damage." [26]

Thus, the superior court erred in determining that the statute of limitations for Jarvill's tort claims began to run at the time of Steffen's June 10, 2000 survey. Haag addressed Steffen's concerns, assuring Jarvill that the SEA-J did not need external hull stiffeners, which would merely "rob the performance of the hull." Jarvill proceeded to operate the SEA-J for two and a half years without any sign of malfunctioning. He did not bring suit against Haag or Porky's during that time because he had suffered no harm, at least none that was reasonably discoverable. Because the record does not support Porky's statute of limitations defense, we remand for the superior court to decide Jarvill's negligence and product defect claims on the merits. We next turn to the superior court's determination that any liability attaching to Haag for his construction of the SEA-J should extend to Porky's.

### B. The Superior Court Did Not Err in Finding that Haag Acted as Porky's Agent and Bound Porky's to the Contract with Jarvill.

■ Porky's challenges the superior court's ruling that Haag acted as the company's agent when he built Jarvill's boat on Porky's business premises. Porky's maintains that Todd Haag contracted with Jarvill independently to build his boat, and that Haag acted with neither actual nor apparent authority to bind Porky's. Therefore, the company argues, it "had no duty to Jarvill" that might serve as the basis for Jarvill's tort claims. The record, however, supports the superior court's determination that Haag had at least apparent authority to bind Porky's.

In *Cummins, Inc. v. Nelson,*[27] we observed "three considerations in evaluating apparent agency: (1) the manifestations of the principal to the third party; (2) reliance on the principal's manifestations by the third party; and (3) the reasonableness of the third par-

ty's interpretation of the principal's manifestations and the reasonableness of the third party's reliance." [28] Here, the superior court found that "Porky's purchased the materials, records about the boat were kept at Porky's, Porky's employees worked on the boat, the boat was built in its shop, Porky's hoped to make a profit from the boat and Porky's billed Mr. Jarvill for extra work not covered by the original price." These and other undisputed facts adequately support the superior court's finding that Porky's manifestations led Jarvill to believe that Haag was acting as the company's agent, and that Jarvill reasonably relied on those manifestations.

In *Cummins,* we held that a principal's manifestations "may be directly communicated to the third party or may come through signs, advertising, authorization of an agent to claim that he is authorized, or continuous employment of the agent." [29] In *Cummins,* boat owners sued the manufacturer and local installer of an engine for damages arising out of its failure.[30] The boat owners had initially called the manufacturer, which had provided them with the phone number of the local installer.[31] We upheld a jury award based on apparent authority, noting that we usually reserve "for the trier of fact to decide whether a reasonable person in the position of the third party would believe that the agent had the authority or the right to do a particular act." [32]

Here, the principal directly employed the agent it seeks to disclaim. Jarvill testified that he believed that he had contracted with Porky's, rather than "Todd Boats" or any other independent company. And this belief seems reasonable given that Jarvill first discussed the boat with Haag at the Porky's warehouse, where Haag built the boat with the help of other Porky's employees.

Porky's points out that Steffen's marine surveys list "Todd Boats" as the boat builder and that Haag indicated to Steffen that he

---

**26.** 1A SPEISER, ET AL., *supra* note 24, § 5:35, at 381.

**27.** 115 P.3d 536 (Alaska 2005).

**28.** *Id.* at 542.

**29.** *Id.*

**30.** *Id.* at 539–40.

**31.** *Id.*

**32.** *Id.* at 544.

was the boat builder of record. Moreover, Jarvill authorized loan disbursements directly to Haag for the boat, whereas when he had previously purchased services and supplies from Porky's,[33] he paid the company directly rather than any individual employee. Finally, Porky's argues that because Jarvill only discussed the boat contract with Haag, not with Porky's executives Brian and Oliver Bickar, he cannot claim to have reasonably relied on the company's manifestations of an agency relationship. But these factors do not persuade us that the court committed clear error in finding that Jarvill reasonably relied on Porky's manifestations that Haag was authorized to act on its behalf. In short, the undisputed facts, including Haag's use of Porky's facilities and his employment with Porky's, lead us to affirm the superior court's ruling that Haag had at least apparent authority. We therefore turn to Porky's contention that the superior court erroneously admitted expert testimony from Jim Steffen regarding the SEA-J's alleged negligent design and construction.

### C. The Superior Court Did Not Err in Admitting Testimony from Steffen that the Boat Was Negligently Constructed.

■ The superior court never resolved Jarvill's negligence and product defect claims on their merits. Nevertheless, in disposing of Jarvill's unfair trade practices claims, the superior court remarked that "Mr. Haag built a defective boat and his use of thin hull plating without more stiffening was negligent." Although this dicta did not affect the outcome below given the trial court's dismissal of Jarvill's claims on statute of limitations grounds, it indicates that the court relied on Steffen's testimony that Haag negligently constructed the SEA-J. In its cross-appeal, Porky's argues that the trial court incorrectly admitted that testimony. We disagree.

Porky's argues that the court erred in admitting "expert testimony" from Steffen on the boat's negligent construction because

"Steffen admitted he was not a naval architect." Steffen testified that the SEA-J was "negligently constructed" and "defective." Days after this testimony, Porky's raised an objection, seeking to clarify that Steffen's testimony represented his "lay opinions and not expert opinions" because "he is qualified for condition, valuation and cause, but not for construction or design." The superior court agreed that it "let that in as lay opinion."

As Porky's itself points out, the superior court knew that Steffen was not qualified as an expert in construction or design of boats. The superior court ruled that Steffen "had the expertise in damage and repair and causation and evaluation and condition. And these issues go to the condition. The only thing that—where he gets into ... boat design is where I found that he was not an expert."

Porky's argues that "the court lacked any expert testimony for its finding that Haag built a defective boat and was negligent," because the "only other witness to testify on the design and construction of the Jarvill boat was Todd Haag," who denied any negligence. While Steffen was not qualified as a naval architect, who could address whether the boat was negligently designed, he was able to provide opinion testimony within his expertise in "the area of marine evaluation and condition, as well as damage and causation issues concerning boats." Steffen's damages report detailed the likely cause of the boat's sinking. He had also voiced his concerns during the construction phase about the boat's hull sheeting. This evidence was admissible to support Jarvill's claim that Haag built a defective boat. And the superior court did not have to rely on Steffen's opinion as an expert in construction or design to conclude that Haag negligently used thin hull plating without additional stiffening. In conclusion, Steffen's testimony was admissible and may be considered by the superior court in analyzing the merits of Jarvill's tort claims on remand.

---

33. Jarvill had previously purchased a chain saw from Porky's and paid for welding work on a boat trailer hitch and a pickup truck bumper.

## V. CONCLUSION

We REVERSE the superior court's dismissal of Jarvill's claims as time barred. We AFFIRM the superior court's findings that Haag acted as Porky's agent and its admission of Steffen's testimony that Haag negligently constructed the boat. We REMAND for a determination of Jarvill's negligence and product defect claims on the merits.

EASTAUGH, Justice, not participating.

