FABE, Justice,
dissenting.
I. INTRODUCTION
Because I disagree with the court's application of the discovery rule in this case, I respectfully dissent. "Under the discovery rule, a cause of action acerues 'when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action'" [1] In my view, this rule compels the conclusion that the statute of limitations period on Christianson's malpractice claim did not begin to run until Great Divide formally disclaimed its duty to defend Christianson in March 2006. The court reasons that the statute of limitations period started to run when Christianson received Great Divide's September 24, 2004 letter.[2] The court cites to authority from other jurisdictions to contend that Christian-son's defense costs in 2004 completed the elements of his malpractice tort claim against his insurance broker and therefore triggered the statute of limitations period.[3] But in each of the cited cases, the defense costs were incurred after a definitive denial of insurance coverage, which did not occur in this case until 2006. The essential elements of Christianson's cause of action could not be discovered in 2004 because Great Divide had not yet taken a definitive position on coverage or decided whether it would reimburse Christianson for the cost of his defense. Furthermore, the statute of limitations period on Christianson's malpractice claim should have been equitably tolled under the rule declared in Brannon v. Continental Casualty Co.[4]
II. DISCUSSION
A. The Statute Of Limitations Could Not Have Started To Run On September 24, 2004 Because Christian-son Had Not Yet Suffered An Injury.
1. Christianson's claim was not yet ripe.
The court concludes that the superior court did not err in finding that "the statute of limitations began running [on September 24, 2004,] when Christianson learned information that should have caused him to make an inquiry that would have discovered the essential elements of his cause of action against CHI." [5] But in my view the statute of limitations could not possibly have started to run then because the essential elements of Christianson's claim had not yet accrued. Because his insurers had not yet declined to defend him, Christianson had not yet suffered an injury attributable to CHI and thus *410 could not have brought a malpractice claim against CHI at that time.
In Thomas v. Cleary, we held that suspected future harm is not enough to ripen a claim of professional malpractice.[6] In that case, the Clearys sued their accounting firm, alleging that it had miscalculated and failed to file taxes owed by their business.[7] After a jury awarded damages to the Clearys, the accounting firm appealed, arguing that the Clearys' claim was not yet ripe because the corporation's tax liability for the year in question had not yet been assessed by the IRS.[8] We held that there must be a definite injury before a claim for malpractice becomes actionable:
The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm-not yet realized-does not suffice to create a cause of action for negligence. Hence, until the client suffers appreciable harm as a consequence of [the professional's] negligence, the client cannot establish a cause of action for malpractice.[9]
And we also held that, even though the Clearys knew about the accountant's misconduct and knew that they would be liable if the IRS ever did assess a deficiency, they had not yet suffered the required injury because the IRS had not yet assessed a tax deficiency against them: "Even if [the client] discovers [the professional's] negligent acts before he suffers damages, the cause of action for malpractice is not complete until actual damages are suffered." [10] We concluded that the Clearys' claim was not yet ripe because harm could still be averted: "If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action." [11]
The present case is similar. Christian-son's malpractice claim against CHI was not yet ripe when Christianson received Great Divide's September 24, 2004 letter because the letter left open the possibility that Great Divide would defend Christianson or reimburse him for a defense. The letter said only that Great Divide "may refuse to indemnify [Christianson] in this matter" (emphasis added) and that Great Divide would provide Christianson with its position regarding coverage sometime in the future. If, after sending the letter, Great Divide (or one of Christianson's other insurers) had provided coverage instead of denying it, Christian-son would not have been harmed and would not have had a cause of action. Prior to an actual denial of coverage from Great Divide, any injury from CHI's alleged malpractice was purely speculative. Therefore, Chris-tianson's claim for malpractice could not have ripened before a formal denial of coverage.
The court places great emphasis on the fact that Christianson incurred defense costs after Great Divide's September 24, 2004 letter informed him that Great Divide "may refuse to defend or indemnify [him] for this matter." The court cites to cases from other jurisdictions to support its contention that the fact of incurring attorney's fees completes the elements of a malpractice tort claim against an insurance broker and triggers the statute of limitations.[12] In each of those cases, however, the defense costs were incurred after a definitive demial of coverage.[13] Similarly, the court relies on Gude- *411 nau & Co., Inc. v. Sweeney Insurance, Inc., where we held that the discovery rule was triggered and the statute of limitations began to run when the insurance claim was formally rejected by the insurer.[14] But Great Divide's September 24, 2004 letter indicated that it was not stating a definitive position on coverage, which would be provided only after its investigation.
As we held in Jarvill v. Porky's Equipment, Inc., the statute of limitations on a claim cannot begin to run until the claim is ripe.[15] In that case, Jarvill bought a fishing boat from Porky's Equipment.[16] When the boat was delivered, Jarvill's inspector expressed concern that the aluminum sheeting used for the hull was too thin to be safe.[17] Two-and-a-half years after delivery, the hull cracked and the boat sank.[18] Jarvill sued Porky's Equipment for negligence and for selling a defective product.[19] Porky's Equipment claimed that the two-year statute of limitations barred Jarvill's suit because Jar-vill had notice of the defect at the time of delivery and, under the discovery rule, reasonable inquiry would have led Jarvill to discover all the essential elements of his claim.[20]
On appeal we rejected the argument of Porky's Equipment.[21] Despite the fact that Jarvill was put on notice that the boat might be defective when it was delivered, we held that "any tortious injury to Jarvill remained a matter of speculation" until the boat actually sank.[22] We held that "the discovery rule only extends the statute of limitations; it does not shorten it."[23] And we recognized that starting the statute of limitations when Jarvill had notice of only potential future harm would require us to conclude, paradoxically, that Jarvill's claim had accrued before it was ripe, and would "lead us to the anomalous and grossly unfair result of the statute being held to have run and the bar becoming completed even before the hapless plaintiff suffered injury or damage." [24]
In my view, the present case is indistinguishable from Porky's Equipment. No matter what Christianson should have suspected when Great Divide first informed him it was considering denying his claim, he had no right of action against CHI until he had actually been denied insurance coverage. Like the warning that the boat's hull was too thin, Great Divide's letter signaled potential future injury. But it was only when the boat actually sank that harm was done and a claim accrued; if the boat had stayed afloat, there would have been no claim. And if, after sending its initial letter, Great Divide had provided coverage and reimbursed Christian-son for his defense, then Christianson would have had no right of action against CHI for malpractice. Therefore, Christianson's claim could not have been brought when he received Great Divide's letter, and the statute of limitations cannot have started to run then.
The court claims that it is irrelevant to the discovery rule issues whether or not Chris-tianson could have filed a malpractice lawsuit against CHI after receipt of Great Divide's *412 September 24, 2004 letter.[25] But this contention contradicts the court's own formulation of the discovery rule as "simply deter-min[ing] when the cause of action accrues for purposes of triggering the applicable limitations period." [26] Black's Law Dictionary defines "accrue," as applied to a ecause of action, as follows: "[a] cause of action 'acerues' when a suit may be maintained thereon." [27] Therefore, it cannot be irrelevant to consider whether Christianson could have maintained a malpractice lawsuit in the fall of 2004, when the court insists that the statute of limitations was triggered. The court's subsequent discussion of the difference between the knowledge sufficient to require inquiry and the knowledge sufficient to support a lawsuit[28] obscures the essential requirement that Christianson's cause of action must have accrued before the discovery rule became applicable.
2. The superior court clearly erred by finding that Great Divide's September 24, 2004 letter was a definitive denial of coverage.
The superior court found that a reasonable person, looking at Great Divide's September 24, 2004 letter, would have felt absolutely certain that Great Divide would eventually deny coverage, and that therefore the letter was as good as a formal denial. The superi- or court concluded that Christianson suffered injury in September 2004. Today the court concludes that this finding was not clearly erroneous.[29] But we have held that the statute of limitations is a disfavored defense and that "neither the law nor the facts should be strained in aid of it."[30] Only by straining the facts could the superior court conclude that the September 24, 2004 letter was an actual denial of coverage. I therefore conclude that the superior court's findings on this point were clearly erroneous.
The superior court found that the letter was an actual denial of coverage for two reasons. First, the superior court found that the letter essentially informed Christianson that he "was on his own" and that Christian-son began incurring damages shortly thereafter. Second, the superior court found that the letter's discussion of exclusions in Chris-tianson's policy informed him that he was not covered. In my view, the superior court's analysis on both of these points was incorrect.
a. -It was error to interpret the plain language of the September 24, 2004 letter as "effectively disclaiming Great Divide's duty to defend Mr. Christian-son."
I conclude that it was plain error to interpret Great Divide's September 24, 2004 letter as a definitive denial of coverage. The letter stated clearly and repeatedly that Great Divide was not yet denying coverage or a defense. Specifically, the letter stated: "We have assigned [an adjuster] to investigate the cireumstances of this incident.... Once the investigation has been conducted, we will review the information and documentation obtained. ... We will then provide you with our position regarding coverage." - (Emphasis added.) It also indicated that "Great Divide may refuse to defend or indemnify you for this matter." (Emphasis added.) Great Divide could have decided to defend Christian-son without contradicting anything it wrote in the letter.
The superior court's attempt to reconcile this clear language with its conclusion that Great Divide's letter actually denied coverage led to factual findings that contain inter *413 nal contradictions. While the superior court found that Great Divide was "effectively" denying Christianson a defense, it also found that the letter was merely a "preliminary determination" that put Christianson "on notice of the precise reason Great Divide eventually declined to indemnify his loss or reimburse legal costs." (Emphasis added.) But the letter must have either been an actual denial or a preliminary determination. In my view it was clear error to find that it was both.
The superior court also placed great weight on Great Divide's statement that it would be "necessary for [Christianson] to protect [his] own interest in regard to the Complaint." The superior court found that this phrase was "critical" and interpreted it to mean that "Great Divide was effectively disclaiming its duty to defend Mr. Christian-son." But this phrase was sandwiched between important qualifying language, which the superior court failed to discuss. Immediately before, Great Divide indicated that such action would only be necessary "[iJn the interim" until it provided Christianson with its "position regarding coverage." And later in the same paragraph, Great Divide promised to reimburse Christianson "[slhould we determine that we do in fact have a duty to provide a defense in this matter." I would hold that it was clear error to interpret these plainly noncommital statements as a definitive denial of coverage.
The superior court's analysis is not saved by its insistence that the letter forced Chris-tianson to provide his own defense. Because Great Divide explicitly left open the possibility that it would reimburse Christianson for this expense, Christianson had not yet suffered any injury attributable to CHI, The strongest claim that the facts will bear is the court's observation that "[Christianson] was therefore aware he was presently suffering an out-of-pocket loss [for which] Great Divide might not reimburse him. . .." [31]
b. It was clear error to find that Great Divide's discussion of policy exclusions implied a denial of the duty to defend.
It was also clear error for the superior court to find that Great Divide's discussion in the September 24, 2004 letter of exclusions in Christianson's policy was equivalent to an actual disclaimer of the duty to defend and indemnify. This is essentially a finding that, through careful analysis of the policy exclusions, Christianson could have predicted that Great Divide would eventually deny coverage. But we have rejected the idea that the insured should be expected to go beyond the express representations of his insurer to divine the seope of his coverage. In Gudenau & Co., Inc. v. Sweeney Insurance, Inc., we concluded that "[iInsurance policy exclusions do not necessarily have independent meaning for a layperson" and held that the statute of limitations began to run not when the insured read his policy, which contained an exclusion of coverage, but when the insurer actually rejected the claim.[32] The situation is similar here. Great Divide's letter may have drawn Christianson's attention to the exelusions it would eventually invoke to deny his claim, but it was clear error to find that merely highlighting these exclusions operated as a definite denial of coverage.
And engaging in a murky and fact-sensitive inquiry into whether a hypothetical reasonable person would, despite Great Divide's express language to the contrary, treat the September 24, 2004 letter as a definitive denial of a defense is inconsistent with the bright-line nature of a statute of limitations. "Statutes of limitations should be capable of application without engendering extensive litigation before the case on the merits is litigated. Thus, in theory, the statutes of limitations should begin to run on the occurrence of a definitive event." [33] In my view, that definitive event in this case was Great Divide's actual, express denial of coverage.
I conclude that Christianson's malpractice claim was not yet ripe and that the statute of limitations on his claim did not begin to run until Great Divide formally denied coverage *414 in March 2006. I would therefore hold that Christianson's claim, filed in 2008, was not barred by the three-year statute of limitations.[34]
B. The Statute Of Limitations Should Have Been Equitably Tolled Until The Resolution Of The Underlying Litigation.
Even if the statute of limitations period would otherwise have started upon receipt of the September 24, 2004 letter, the equities of the case demand that the statute of limitations be tolled until the conclusion of Chris-tianson's underlying litigation with Jones and Christianson's insurers. The equitable tolling doctrine "relieve[s] a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him." [35] In such cireumstances, the statute is equitably tolled if "(1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (8) plaintiff acted reasonably and in good faith." [36] If the doctrine applies, the statute of limitations is tolled during the pendency of the initial litigation and the plaintiff is given the full statutory period to file onee tolling ceases.[37] In this case, the statute of limitations should have been tolled pending the resolution of the underlying personal injury lawsuit against Christianson and Christian-son's declaratory judgment actions against his insurers.
It should be noted that Christianson did not argue below that the statute of limitations on his malpractice claim should be equitably tolled while he was pursuing other legal remedies. Nor was the issue adequately briefed before us. But in Larson v. State, *415 Department of Corrections, we determined that the statute of limitations on the claim in that case was equitably tolled despite the fact that the issue had not been raised below.[38] Failure to consider whether the statute of limitations should have been equitably tolled in this case would leave Christianson without a remedy and contradict our judgment that the statute of limitations is a disfavored defense and that we "will strain neither the law nor the facts in its aid.[39]
1. Christianson's litigation against Jones and Christianson's insurers demands a tolling of the statute of limitations on Christianson's malpractice claim.
After Christianson received Great Divide's September 24, 2004 letter, he litigated three other actions before filing his claim for malpractice against CHI. First, he defended himself in the personal injury suit filed by Jones, the Titan employee who was injured using the hydroseeder. Second, Christian-son litigated a declaratory judgment action filed by Great Divide for non-liability. Finally, Christianson litigated a similar action filed by Cascade National. In my view, all three of these actions demand that the statute of limitations on Christianson's malpractice claim be tolled.
In Brannon v. Continental Casualty Co., we examined a similar situation.[40] In that case, the insurer refused to defend the insured party against claims filed by the Brannons.[41] The insured party filed for bankruptey, and the Brannons obtained a judgment in their favor as part of the bank-ruptey proceedings.[42] The insured also transferred any claims he had against his insurer to the Brannons, and the Brannons subsequently sued the insurer for breaching its contractual duties under the insurance policy to defend and indemnify the insured.[43] The superior court dismissed the suit on summary judgment, holding that the statute of limitations had started to run when the insurer denied the defense, more than three years before the Brannons filed suit.[44]
On review we adopted the rule that "although the statutory period for breach of the duty to defend commences upon the refusal to defend, it is equitably tolled until the underlying action is terminated by final judgment." [45] Our decision was based on our judgment that requiring the insured to defend himself in the underlying suit while also litigating against his insurance company would be unfair;
[TJolling the statute of limitations during the pendency of the underlying litigation avoids requiring the insured to participate in two lawsuits at onee. After the insurance company has denied the insured a defense, it would be potentially unfair to require the insured to file a lawsuit against the insurance company while simultaneously defending himself in the underlying lawsuit,! [46]
In addition to preventing injustice to the insured, we also recognized that tolling the statute of limitations would "promote judicial economy, lead to certainty of damages, and assist courts by establishing a bright-line rule'" about the statute of limitations period.[47]
*416 The same equitable considerations demand tolling of the statute of limitations period in this case. For purposes of the equitable tolling doctrine, Christianson's claim against his insurance broker for failure to secure insurance coverage is indistinguishable from the claim in Bramnmon against an insurer for failure to defend and indemnify. Both cases involve a defendant who was, allegedly, wrongly exposed to liability. We are thus bound by our conclusion in Brannon that it would be unfair to force a party to both defend himself and seek redress for wrongful exposure to liability at the same time. If anything, the equities requiring tolling in this case are more compelling than in Brannon because Christianson had more to litigate. Christianson was both defending himself in the underlying personal injury lawsuit and litigating the scope of his insurance coverage in separate declaratory judgment actions against Great Divide and Cascade National.
a. The statute of limitations should have been tolled because Christianson was defending himself in the underlying personal injury suit.
In September 2004 Titan employee Keith Jones sued Christianson to recover for injuries sustained while using a hydroseeder. The fact that Christianson was being sued and was required to defend himself justifies tolling the statute of limitations on his claim for malpractice for the same reason it justified tolling the statute of limitations in Bran-non: It would be unjust to require Christian-son to defend himself against Jones and to litigate against his insurance broker at the same time. Christianson would otherwise be required to litigate two cases simultaneously when it was only because of CHI's alleged negligence that Christianson was required to litigate even one.
There is also a clear interest in judicial economy and certainty of damages to be served by allowing Christianson to bring his malpractice claim after judgment has been entered in the underlying lawsuit. The full extent of the damages allegedly caused by CHI's negligence could not be known until the defense had been paid for and judgment entered in the underlying suit. And such a holding would create a bright-line rule without the need for speculative findings. I therefore believe the equities of this case are indistinguishable from those in Brannon.
b. The statute of limitations should have been tolled because Christianson was litigating the scope of his insurance coverage with his insurers.
Christianson also litigated declaratory judgment actions against his insurers, and the statute of limitations on Christianson's malpractice suit should have been tolled pending resolution of these claims. Requiring Christianson to proceed against CHI while litigating declaratory judgment actions against his insurers would foree him to take contradictory positions. In the declaratory judgment actions he would seek to show that Great Divide or Cascade National owed him a defense. In the malpractice suit he would seek to show the opposite-that CHI negligently left him exposed to liability. Forcing him to take these contradictory positions at the same time could prejudice him in both actions.
Several jurisdictions have determined that requiring a litigant to take these types of contradictory positions is "untenable."[48] In Peat, Marwick, Mitchell & Co. v. Lane, the Florida Supreme Court found that the statute of limitations on a malpractice claim against a tax accountant did not commence until after the plaintiff litigated the seope of his deficiency with the IRS.[49] The court held that requiring the plaintiff to file their malpractice action, in which they would argue that their accountant engaged in misconduct, at the same time that they were challenging the IRS's deficiency assessment, in which they would argue that their accountant had done their taxes properly, "would have placed them in the wholly untenable position *417 of having to take directly contrary positions in these two actions." [50] The court concluded that "[tlo require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified." [51] I agree with the logic of the Florida Supreme Court and would extend it to the issue of equitable tolling in this case.
The fact that Great Divide and Cascade, not Christianson, initiated the declaratory judgment actions to litigate the seope of coverage seems of little consequence to the analysis of equitable tolling in this case. Chris-tianson was actively litigating the question of coverage in both declaratory judgment actions, and if Christianson had prevailed in either action, his subsequent suit against CHI would have been unnecessary. He therefore had multiple legal remedies available to him regardless of which party filed the complaint in those cases. I conclude that the equities in this case require the statute of limitations to be tolled until the resolution of the lawsuit against Christianson and the resolution of the declaratory judgment actions with Christianson's insurers.
2. The other conditions necessary to toll the statute of limitations were satisfied in this case.
Our well-established equitable tolling doe-trine requires that, in addition to establishing the proper equities of the case, three conditions must be met before a statute of limitations may be tolled: "(1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evi-denee is not prejudiced by the delay, and (8) plaintiff acted reasonably and in good faith." [52] In Brannon, we concluded that the first two conditions were satisfied because tender of the defense to the insurance company gave them notice of a potential claim for coverage, and the insurance company would not be prejudiced while the underlying suit was resolved.[53] We held that "[wlhether an insured has acted reasonably and in good faith is a question of fact for the superior court to determine on a case-by-case ba-sig," [54]
It appears that these conditions were similarly satisfied in this case as a matter of law.[55] At a minimum, the case should be remanded to the superior court for additional findings. In my view, CHI was on notice of Christianson's potential malpractice claim because CHI was informed on several occasions of the suit against Christianson and the potential gap in his insurance coverage. When Christianson was sued, he filed notice of the lawsuit with CHI, and it was CHI who tendered the defense to Great Divide. In November 2006 Mike Dennis, Christianson's insurance broker and an agent of CHI, gave a deposition in which he was informed of the suit against Christianson and reviewed Christianson's insurance policy. And in July 2007 Christianson tendered his defense to CHI and informed CHI of his intent to take legal action should a gap in coverage be established through the declaratory judgment action against Cascade National. CHI therefore had notice of a potential malpractice suit.
And CHI was not prejudiced by any delay. Onee CHI was on notice of its potential liability, it had the ability and motivation to gather evidence to defend itself[56] There also has been no suggestion that Christian-son was acting in bad faith by waiting until *418 after the resolution of the underlying Jones suit and the declaratory judgment actions with Great Divide and Cascade National to file a malpractice claim.
Citing Gudenau & Co., Inc. v. Sweeney Inswrance, Inc.,[57] the court suggests that equitable tolling is inappropriate in this case because "Christianson did not previously pursue a claim against CHI in any forum." [58] In Gudenau, we held that the statute of limitations is tolled only for those who initially pursue their rights in a judicial or quasi-judicial governmental forum."[59] But we did not determine that the initial action must be against the same party. Nor was there any such requirement in Brannon. There we held that Brannon's claim against the insurer was tolled pending resolution of the underlying bankruptey proceedings against a different party.[60] Indeed, our holding in that case was based on the judgment that it would be unjust to force the plaintiff to litigate with his insurance company while defending the underlying suit.[61] Therefore, a requirement that the statute of limitations may be tolled only pending resolution of claims against the same party conflicts with our holding in Brannon.
III. CONCLUSION
In my view, it was error to conclude that the statute of limitations on Christianson's malpractice claim started to run on September 24, 2004. Christianson had not yet suffered a definite injury, and so an essential element of his claim had not yet accrued. I also believe that the statute of limitations in this case should have been tolled until the resolution of Christianson's underlying litigation. I therefore respectfully dissent.

. Roach v. Caudle, 954 P.2d 1039, 1041 (Alaska 1998) (quoting Cameron v. State, 822 P.2d 1362, 1366 (Alaska 1991)).

. Op. at 396-400.

. Op. at 400 n. 35.

 137 P.3d 280 (Alaska 2006).

 Op. at 404-05.

. 768 P.2d 1090, 1092-93 (Alaska 1989).

. Id. at 1091.

. Id. at 1092.

. Id. (quoting Budd v. Nixen, 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433, 436 (1971), superseded by statute, 1977 Cal. Stat. Ch. 863, § 1, as recognized in Laird v. Blacker, 279 Cal.Rptr. 700 (Cal.App.1991)).

. Id. at 1094 (citing Greater Area Inc. v. Bookman, 657 P.2d 828, 829 n. 3 (Alaska 1982)).

. Id. at 1093 (quoting Atkins v. Crosland, 417 S.W.2d 150, 153 (Tex.1967)).

. Op. at 400 n. 35.

. See Am. Home Assurance Co. v. Osbourn, 47 Md.App. 73, 422 A.2d 8, 16 (1980) (holding that the statute of limitations for the malpractice claim against the insurance broker began to run on the date when the insurance company sent a letter "stating there was no coverage and declining to provide a defense"); Spurlin v. Paul Brown Agency, Inc., 80 N.M. 306, 454 P.2d 963, 964 (1969) (holding that the malpractice cause of action accrued when the insurance broker's client was sued, which was nearly two years after being definitely informed by the insurance broker that there was no coverage on his vehicle); see also Wallace v. Helbig, 963 S.W.2d 360, 361- *411 62 (Mo.App.1998) (holding that the malpractice statute of limitations began to run when the trial court "entered a declaratory judgment ... which determined that the insurance policy provided by [the insurance broker] did not provide coverage. ... In the event the court had declared there was coverage, [the insured] would not have had a cause of action against [the insurance broker] under any recognized legal theory.").

. 736 P.2d 763, 767 (Alaska 1987) (in applying the discovery rule, we also noted that "Glasurance policy exclusions do not necessarily have independent meaning for a layperson. The insured is entitled to rely on his broker's professional skill and representations when interpreting the scope of his insurance coverage.").

. 189 P.3d 335, 341 (Alaska 2008).

. Id. at 336.

. 1d.

. - Id. at 337.

. Id.

. Id. at 338-39.

. Id. at 339-40.

. Id.

. Id. at 339.

. Id. at 340-41 (internal citation omitted).

. Op. at 400.

. Op. at 397.

. See United States v. Meyer, 808 F.2d 912, 914 (ist Cir.1987) (alteration in original) (quoting Buack's Law Dictionary 19 (5th ed.1979)); see also Conrad v. Hazen, 140 NH. 249, 665 A.2d 372, 375 (1995) (holding that an action "does not accrue until 'a suit may be maintained thereon' " (quoting - Buack's Law - Dictionary 21 (6th ed.1990)}).

. Op. at 400.

. Op. at 398-99.

. Tipton v. ARCO Alaska, Inc., 922 P.2d 910, 912-13 (Alaska 1996) (quoting Safeco Ins. Co. v. Honeywell, 639 P.2d 996, 1001 (Alaska 1981)) (internal quotation marks omitted).

. - Op. at 399-400 (emphasis added).

. 736 P.2d 763, 767-68 (Alaska 1987).

. Pedersen v. Zielski, 822 P.2d 903, 907 (Alaska 1991).

. Even assuming that Christianson suffered immediate injury and that all the elements of a malpractice suit were in place, waiting to be discovered, as of September 24, 2004, the superi- or court also erred by failing to make findings about whether Christianson's inquiry was reasonable.
Whether an inquiry was reasonable is a "genuine issue[] of material fact which must be resolved at an evidentiary hearing." Id. at 908. We have held that, where the plaintiff has made an inquiry, the court should ask not whether an ideal inquiry would have produced knowledge, but whether the inquiry that was made was reasonable. Id.
The superior court failed to examine whether Christianson's inquiry was reasonable under this standard. - Christianson investigated the existence of a claim for malpractice against CHI by tendering the defense to his insurers and litigating the scope of their obligations in declaratory judgment actions. Only three sentences in the superior court's opinion conceivably relate to the issue of whether this inquiry was reasonable, and they are all merely observations about the characteristics of an ideal inquiry:
A reasonable inquiry would involve an investigation of both his insurer's position and the actual coverage that his broker obtained for him.... [An inquiry {when Christianson received Great Divide's September 24, 2004 letter} would have revealed what Mike Dennis allegedly conceded at his deposition: that CHI failed to advise Mr. Christianson of the need to obtain coverage for the continued operation of GALL's hydroseeder. The inquiry would also have revealed that Cascade National was unwilling to cover the loss.
Today this court reads these "as effectively finding that Christianson did not make a reasonable inquiry." Op. at 405. But these sentences contain no such finding; they do not examine Chris-tianson's conduct at all. Instead of examining whether "a plaintiff's particular inquiry ... was reasonable," the superior court examined whether "a reasonable inquiry would have produced knowledge," an approach we identified as clear error in Pedersen. 822 P.2d at 908.

. Fred Meyer of Alaska, Inc. v. Bailey, 100 P.3d 881, 886 (Alaska 2004) (quoting Dayhoff v. Tem-sco Helicopters, Inc., T72 P.2d 1085, 1087 (Alaska 1989)).

. Id.

. See id. (citing Gudenau & Co., Inc., 736 P.2d at 768). Although our previous cases have uniformly held that once the circumstances that justify equitable tolling abate, the plaintiff has the full statutory period to file his claim, we left open the question whether this will be true in every case in Solomon v. Interior Regional Housing Authority, 140 P.3d 882, 885-86 (Alaska 2006). But even if equitable tolling in this case merely paused the statute of limitations period instead of resetting it, Christianson filed his claim against CHI in time. Christianson began litigating the declaratory judgment action against Great Divide less than two years after Great Divide sent the letter definitively disclaiming its duty to defend in March 2006. And Christianson filed his lawsuit against CHI only nine months after Cascade finally prevailed on its declaratory judgment action. Therefore, excluding the time spent litigating the declaratory judgment actions against Great Divide and Cascade, Christianson brought his claim against CHI within three years of receiving Great Divide's letter.

. Mem. Op. & J. No. 1257, 2006 WL 1868494, at "5-6 (Alaska, July 5, 2006).

. Solomon, 140 P.3d at 883 (holding that, where there is no dispute over relevant facts, the date on which the statute of limitations begins to run "becomes a question of law to which we will apply our independent judgment").

. 137 P.3d 280 (Alaska 2006).

. Id. at 282.

. Id. at 283.

. Id.

. Id. The applicable statute of limitations requires that contract actions be commenced within three years. See AS 09.10.053.

. - Brannon, 137 P.3d at 285 (quoting Lambert v. Commonwealth Land Title Ins. Co., 53 Cal.3d 1072, 282 Cal.lRptr. 445, 811 P.2d 737, 739 (1991)) (internal quotation marks omitted).

. Id. at 286.

. Id. (citing Shaw v. State, Dep't of Admin., Pub. Defender Agency, 816 P.2d 1358, 1361 (Alaska 1991) ("[Wle note the desirability of allowing a criminal defendant with a valid post-conviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim.").

. E.g., Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1326 (Fla.1990); United States Nat'l Bank of Oregon v. Davies, 274 Or. 663, 548 P.2d 966, 970 (1976); Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 157 (Tex.1991).

. 565 So.2d at 1326.

. Id.

. Id.

. Dayhoff v. Temsco Helicopters, Inc., 772 P.2d 1085, 1087 (Alaska 1989).

. Brannon v. Continental Cas. Co., 137 P.3d 280, 286 (Alaska 2006).

. Id.

. See Beegan v. State, Dep't of Transp. & Pub. Facilities, 195 P.3d 134, 141-42 (Alaska 2008) (holding that the requirements for equitable tolling were satisfied as a matter of law); Solomon v. Interior Reg'l Hous. Auth., 140 P.3d 882, 885 (Alaska 2006) (same).

. See Brannon, 137 P.3d at 286 (holding that an insurance company that was sued for failure to defend was not prejudiced by tolling the statute of limitations until the end of the underlying suit because once the defense was tendered the insurance company had "the ability and motivation to gather evidence").

. 736 P.2d 763 (Alaska 1987). .

. Op. at 407.

. Gudenau & Co., Inc., 736 P.2d at 768.

. Brannon, 137 P.3d at 287.

. Id. at 286.